Nott., J.,
delivered the opinion of the court:
At the common law the landlord was entitled to possession at the expiration of a lease, and might oust the tenant or *501 bring ejectment without notice to quit or demand for possession being first made. If, howeAer, tbe landlord suffered the tenant to remain in possession after the expiration of the term, the common law intervened by requiring that the tenant should not be subjected to an action in trespass (though he might be to an action in ejectment) unless an entry or demand were first made, and by declaring that as the tenant was in possession under lawful title, the continuance of possession should not be deemed unlawful until the landlord by some act, like an entry, should put the tenant in the wrong. This shadowy estate was termed tenancy at sufferance. Practically, its effects were that the landlord might obtain at pleasure — that is, without notice — possesssion of the premises, and might recover for the period of the holding over as for use and occupation a proportional part of the rent. Practically, it differed from the holding of a trespasser only in this, that the landlord by his acquiescence could at any time base upon it the relation of landlord and tenant, which he could not establish at will against a mere trespasser, and that the tenant could not be subjected to an action in trespass before entry or demand.
If, however, the landlord, continuing to suffer the tenant to retain the occupancy, recognized him as tenant by any act of consent, such as the payment and acceptance of rent, there arose against the landlord the presumption of a continued privity between him and his tenant, and'the common law again intervened and raised the estate from a tenancy at sufferance to a tenancy from year to year. As farm holdings originally furnished the chief subject-matter of this branch of litigation, and as in agricultural communities the transactions of men are carried on with fewer precautions than in mercantile business, farmers frequently continuing to hold, without the formality of a new lease, long after the original leases have expired, the common law in furtherance of justice and in tender regard of the weaker party, the tenant farmer, attached to these tenancies from year to year a condition not to be found in the original agreement. This condition was that neither'party should terminate the tenancy except by a notice of half a year. The rule was neither arbitrary nor artificial, being manifestly grounded on the sound reason that upon the one hand ho needless time should be prescribed, and, on the other that the farmer should receive such notice as would enable him to forego the planting of spring or *502 fall crops that would inure to the benefit of his landlord. Like most of the principles of the common law when limited to the circumstances which called them into existence, this rule as applied to its primitive subject-matter was eminently wise and just.
There was, however, a class of cases in which the original lease did not furnish a foundation whereon to plant a tenancy from year to year; that is to say, cases wherein the original letting was not annual. As to such cases, the rule was that the continued tenancy, implied from the holding over of the tenant on the one side and the consent or recognition of the landlord on the other, should be deemed a tenancy at will. Hence the expression usually found in the books, that if consent can be inferred from any act of the landlord, “ a tenant at sufferance will become a tenant at will or from year to year."
But while it is somewhat heedlessly said that no tenancy at will or from year to year arises from the holding over of the tenant until there be a recognition of a continued tenancy by the landlord, as from the acceptance of rent, and that there is no privity between the parties, the inaction of the one being laches and the possession of the other wrongful, yet it by no means follows that the tenant at sufferance was released from any obligation of his lease, nor that he could set up this want of privity between his landlord and himself, nor that he could say that his possession was wrongful. On the contrary, if he held over but for a single day, he thereby assumed the risk of being held to the obligations of a tenant at will or from year to year, as might be determined from the nature of the previous lease. As we have recently had occasion to say in another case (Morgan et al. v. The United, States, ante, p. 319), the landlord might recover at the agreed rate (Cobb v. Stokes, 8 East, 358), either as rent Ibbs v. Richardson, 9 Ad. & E., 849), or for use and occupation (Christy v. Tancred, 7 Mee. & We., 127); and the tenant, unlike the landlord, had no election to determine whether he should be treated as a tenant or as a trespasser (Conway v. Starkweather, 1 Denio, 113); nor could he throw off the character of tenant, “however onerous it might be,” nor say that he held upon any other terms than those prescribed by the original lease (Schuyler v. Smith, 51 N. Y., 309); and though he voluntarily removed from the premises while his rights were still in the inchoate condition of a tenant at sufferance, yet nevertheless the landlord could hold him for the period past and subse *503 quent as completely as if be bad become a tenant at will or from year to year (Id). In other words, tenancy at sufferance was-but an interregnum, during which the landlord bad an election to determine whether he would oust the tenant or hold him to renewed obligations under the expired léase.
In most of the States of this Union the common law became the law of landlord and tenant. Nevertheless in this country the great body of farmers hold their land in fee-simple, and the great body of tenants are to be found iu, city communities. It was inevitable, therefore, that statutes should sooner or later come to change the rules of the common law, and adapt the law of landlord and tenant to the wants and conditions of this new order of affairs. In New York, for instance, the statute law provides generally for the State at large that a tenancy at will or at sufferance may be terminated “by the landlord’s giving one month’s notice in writing to the tenant, requiring him to remove,” and specially for the city of New York (where the custom is to make the 1st of May the time when leases begin and terminate), that “ agreements for the occupation of lands or tenements,” “ which shall not particularly specify the duration of such occupation, shall be deemed valid until the first day of May” next ensuing (1 Rev. Stat. N. Y., p. 744, § 1-7).
The patient and .elaborate research of the learned counsel for claimant has shown with great clearness that the rules of the common law were adopted by the State of Maryland, and consequently became applicable to real property in this portion of the District of Columbia. But here as elsewhere a statute came to change the common law, and the principal question which we have now to determine is whether the statute controls the case. That statute is the Act áth July, 1804(13 Stat. L., 383; Rev. Stat. D. C., § 680, 681), and is in the following terms:
“ § 680. That a tenancy at will shall not arise or be created without an express contract or letting -to that effect, and all occupation, possession, or holdiug of any messuage or real estate without express contract or lease, or by such contract or lease the terms of which have expired, shall be deemed and held to be tenancies by sufferance.
“ § 681. All estates at will and sufferance maj- be determined by a notice, in writing, to quit, of thirty days, delivered to the tenant in hand, or to some person of proper age upon the premises, or, in the absence of such tenant or person, then such notice may be served by affixing the same to a conspicuous part of the premises, where it may be conveniently read.”
*504 It is contended by tbe learned counsel for tke claimants that the statute leaves tenancies from year to year unimpaired in the full vigor of the common law. If it had stopped with the words “tenancies at will,” that construction would not be unreasonable. But when the statute, without, it is true, specially enumerating tenancies from year to year, specifically says “ all occupation, possession, or holding,” after a lease has expired, “ shall be deemed and held to be tenancies by sufferance,” it seems clearly intended to include in whatever change it effects every form of holding over, and leaves no room upon which the most liberal construction can found an exception. Tenancy at will arose at the common law by other processes than the holding over of the tenant, and the first line of the statute, as it includes, may be construed to refer to them. The second clause of the same section manifestly embraces all tenancies arising from or founded on the holding over of the tenant, whether they be tenancies at will or tenancies from year to year. Before the statute, if the tenant held over and the landlord recognized a continued relation between them, there arose, by implication of law, a continuance of the former lease, which might be either tenancy at will or tenancy from year to year, as the nature of the original lease required. It was the purpose of the statute not to strike out one or the other of these resulting leases, but (1) to abolish the common-law necessity of establishing by evidence the landlord’s recognition of or consent to the continuing tenancy; and (2) to reduce all cases of holding over to a common plane of legal certainty.
But the framers of the statute, by borrowing two well-defined terms from the common law, without due regard to the meaning that the common law attached to them, have not only brought together things incongruous, but have actually applied the terms in an exactly opposite sense to their common-law meaning.
In the first place, when the statute defines all cases of holding over as “ tenancies by sufferance,” it is,*if taken literally in its common-law sense, equivalent to saying that they should be no tenancies at all. As we have seen, tenancy at sufferance established no privity between the parties, conferred no right upon the tenant, was accounted the laches of the landlord, and amounted to a mere period of abeyance, during which the landlord might do what he pleased. And this was not ancient or *505 obsolete common law; for tbe latest writer on landlord and tenant (Taylor, § 65) says: “A tenant at sufferance bas only a naked possession, stands in no privity to tbe landlord, cannot maintain an action of trespass against bim, is not entitled to notice to quit, nor is be liable to pay rent. For be bolds by tbe lacbes of tbe landlord, wbo may enter and put an end to tbe tenancy whenever be pleases.” We tbinb tbis is stated some-' wbat too broadly; but it shows very clearly that tbe statute never could have been intended to reduce all cases of tenancy by bolding over to tbe inchoate condition of tenancy at sufferance as defined by tbe common law. In tbe second place, it was a distinctive feature of tenancy at sufferance that tbe tenant bad no right to notice to quit, and that tbe landlord might oust bim ■or bring ejectment when be pleased, or might sue bim as a trespasser immediately upon a demand for possession. Here tbe statute expressly takes away that common-law right of tbe landlord. In tbe third place, it was a distinctive feature of tenancies at will that tbe landlord could not determine tbe tenancy at pleasure, but, while be might exercise bis will when be pleased, must do so by means of a reasonable notice to tbe tenant; which is precisely tbe nature of tbe tenancy which tbe statute here creates. In a word, tbe statute abolishes tenancies at will eo nomine, and immediately proceeds to create tenancies at will in substance; conversely it declares all tenancies by holding over to be tenancies “by sufferance,” and in tbe next section abolishes tenancies by sufferance and turns them into tenancies at will. Tbe question of interpretation is whether tbe statute shall be interpreted in accordance with tbe name or tbe thing— in accordance with tbe shadow or tbe substance.
Tbe framers of tbe statute rindoubtedly intended to do away with tbe necessity of introducing evidence to show tbe consent of tbe landlord in cases of continuing tenancy, and the distinction of notice in cases of tenancy at will and tenancy from year to year; and tbe well-known fact was probably in ikeir minds when draughting tbe statute that at common law tbe landlord might oust the tenant at sufferance without notice to quit; but Congress could never have intended to reduce all cases of a mutual continuing tenancy to tbe inchoate and one-sided condition of common-law tenancies at sufferance, nor to have reversed tbe condition of affairs by shifting all of tbe losses and obligations to tbe other party. What tbe first section of tbe *506 statute means, is, 1st, that all implied tenancies at will are abolished except such as spring out of the holding over of a tenant; 2d, that all tenancies which would have been tenancies by sufferance at the common law are to be deemed tenancies at will; 3d, that the landlord may determine such tenancies at will by notice to quit in the form and manner prescribed by the succeeding' section.
The interpretation which we give to these provisions of the statute is this:
1. It is not the purpose of the statute to change the contracts which parties have made for themselves. It is not intended to turn tenancies for a year into tenancies for thirteen months; nor to enable the tenant who rents a building for .one month, by the mere act of holding over, to change his lease into a lease for two months. In other words, we have no doubt that the statute leaves unimpaired the landlord’s common-law right of ousting the tenant or bringing ejectment at the expiration of the lease.
2. But in cases where the tenant holds over with the assent of the landlord — cases which at common law would have been tenancies at sufferance — the statute takes away the landlord’s common-law right of an election and turns such cases into what the common law would have called tenancies at will; and these the landlord may, and may only, terminate by giving the notice to quit in the form and manner prescribed by the second section (§ 681).
3. The statute should not be construed to take away by implication the landlord’s common-law right to have such a tenancy terminated on the part of the tenant by reasonable notice; nor does it by implication give the tenant who holds over and enjoys the occupation the unconscionable advantage of terminating the holding at his pleasure by the mere act of removing from the premises. On the contrary, the statute, by a fair and reasonable implication, places both parties upon an equal footing, and leaves undisturbed the principle of the common law, that where a tenancy may be terminated by the landlord by notice to quit, a reciprocal right is given and obligation imposed upon the tenant of terminating it at his will by a like notice.
AYe are also of the opinion that the operation of the statutory notice upon the rent will be according to the well-established *507 principle of tbe common law in like cases; that is to say, when the landlord delays giving notice, so that it will not take effect until after the beginning of a month or quarter, where the rent is payable monthly or quarterly, he will not be entitled to recover rent for the portion of the month or quarter into which by his laches he has permitted the tenant to continue; and, conversely, where a tenant in like manner delays giving notice, he will be liable for the rent of the entire month or quarter wherein he terminates his holding.
And in accordance with this interpretation we hold in this case that the tenancy of the defendants might have been and was terminated by the notice which they gave on the 24th August, 1876, but that their obligation to pay rent continued until the end of the current quarter; that is to say, to the 30th September, 1876.
An additional question is raised by the counsel for the claim-' ants, which is founded upon the following provision of the Appropriation Act 15 August, 1876 (19 Stat. L., 162), in relation to this building:
“ That if the Secretary of the Interior can procure a fire-proof building of suitable accommodations, for a rent not exceeding the sum hereby appropriated, he shall rent the same, to take effect as soon as the present letting can be legally terminated: And provided, That the lease of the present buildings shall be continued if the said buildings shall be made fire-proof by the owners thereof, to the satisfaction of the said Secretary, within six months from the passage of this act, without disturbing the use of the said building; and that any lease made for said building shall expire on nine months’ notice from the Secretary of the Interior.”
But the Supreme Court has determined that such a statute does not constitute a contract (Gilbert & Secor’s Oase, 8 Walt, 358), and we are fully agreed that the statute here vested a complete discretion in the Secretary of the Interior. It was for him to determine primarily whether the building could be made fire-proof without disturbing the defendants’ user of the premises, and next to determine whether the alteration would effect the desired change. The first of these questions he necessarily had to determine before the work was begun, and the second he could possibly determine then also. Be that as it may, the discretion was vested in him, he exercised it, and no court can review the wisdom of his decision.
*508 It being conceded by tbe defendants tbat the claimants should recover for certain injuries done to the building, the judgment of the court is that the claimants recover:
For rent from the 16th to the 30th September, 1876, inclusive. $416 66
For damage done to the building beyond ordinary wear and tear... 7,275 00
Amounting in the aggregate to. 7, 691 66
Drake, Ch. J. was absent when this case was heard, and took no part in the decision.
In the case'of James L. Barbour et al., heard and decided at the same time, judgment for the claimants for $1,628.28 was «ordered to be entered upon the facts as above given.