Nott, Cb. J.,
delivered tbe opinion of tbe court:
Tbe law of real estate is a tiling by itself; conveyances, leases, and devices are regulated by tbe lex rei sitie. In tbe District of Columbia tbe law provides, as between landlord and tenant, that when a tenant bolds over, or when a lease does not prescribe tbe term, it shall continue until one party or tbe other brings it to an end by a month’s notice. That is to say, where tbe parties do not prescribe a term tbe law supplies one, and they adopt it as tbe term intended by tlieir agreement.
In 1879 Congress, by tbe Act 1st July, 1879 (21 Stat, L., 46), expressly “authorized and empowered” tbe National Board of Health “to procure suitable and sufficient offices m tbe city of Washington for tbe transaction of its business, at a rental not to exceed tbe sum of $1,800 per annum.” Tbe authorization to pay an annual rent imported an authorization to rent by tbe year, and tbe amount of tbe rent was tbe only limitation set upon tbe board. When Congress authorized tbe renting of property in a designated place and with no limitation express or implied, except that tbe rent must not exceed a specified amount, it must be assumed, m the absence of other provisions to tbe contrary, that Congress intended tbe property should be acquired for tbe use and occupancy of tbe Government m accordance with tbe law and custom' of tbe place. When tbe Government goes into tbe commercial market it is bound by tbe lex mercatoria. (United States v. Bank of Metropolis, 15 Peters, 377.) And when it goes into the real-estate market to acquire property by lease, with no statutory restriction upon its agents, it is bound by tbe law of landlord and tenant. Chief Justice Waite said, in a case where there was no written lease, but where tbe Government was held liable on an implied covenant against waste, “ Tbe United States, when they contract with their citizens, are controlled by tbe same laws that govern tbe citizen in that behalf. All obligations which would be implied against citizens under tbe same circumstonces will be implied against them. No lease in form was ever executed in this case, but the contract, followed by tbe delivery of possession and occupation under it, is equivalent, for tbe purposes of this action, to a lease duly executed, containing all tbe stipulations agreed upon.” (Bostwick, administrator of Lovett, 94 U. S., 53.)
*458 Under the authority of the statute the National Board of Health, in October, 1879, leased from the claimant the building known as 1410 G street N. W., in the city of Washington, and continued to occupy the same until the 31st August, 1886, at a monthly rent of $100, no term being prescribed. The contract, then, which the defendants entered into in October, 1879, was this: That the Government should occupy the premises at a monthly rent, and that the terms should continue until it should be terminated by thirty days’ notice from either party. (Semmes & Barbour's Case, 14 C. Cls. R., 493.)
Subsequent statutes operated expressly and impliedly to restrain the National Board of Health from incurring liabilities for salaries and expenses in excess of the amounts appropriated by Congress. The history of this legislation is given in Dunwoody's Case (22 C. Cls. R., 269; 23 id., 82; 143 U. S., 578). But statutes are not repealed by implication unless implication be necessary, and a restriction upon the board as to salaries and expenses was not a repeal, in any sense, of an authority to procure offices at a rental not to exceed $1,800 per annum; and the restrictions upon salaries and expenses in excess of the amounts appropriated did not mean that the board was to leave the authorized rent unpaid, but rather that it was to reduce its salaries and incidental expenses so that the rent might be paid without exceeding in the sum total the amounts appropriated by Congress. On the 1st day of October, 1885, when the seventh year of the Government’s occupancy began, there was nothing in any statute which invalidated the lease already made or which restrained the board from contracting for a building at an annual rent not to exceed $1,800, or which required the board to terminate the lease as it then and for six years had existed.
When this last year of occupancy began, the statutory condition of the case was this:
On the 3d March, 1885 (23 Stat. L., 496), Congress had appropriated $5,000 for the “ salaries and expenses ” of the board for the fiscal year ending June 30,1886. No restriction was set upon the board prohibiting it from occupying offices or requiring it to terminate the lease for which Congress had repeatedly appropriated. On the contrary, Congress left the board free to continue the occupancy as it then and for a long time had existed, and the statute was notice to all the world *459 that the National Board of Health would continue to exist at least during the ensuing fiscal year. At that time the only way known to the law by which the existing lease could be terminated and the liability of the Government for the rental be brought to au end was by the tenant giving one month’s notice and removing from the premises. (Morgan & Rhine-hart’s Case, 14 C. Cls. R., 319.) A notice without vacating would be valueless. The notice might come from Congress, the principal, as well as from the board, the agent, but it must contemplate finality. Notice that the tenant would vacate the premises if he should not happen to want them any longer would be no notice at all within the intent of the law. If Congress on the 3d March, 1885, had enacted that the lease should terminate at the end of the next fiscal year, the 30th June, 1886, and that the board should then remove from the premises, that enactment, considered as a notice, would have been effective. If after such an euactment the board had continued to occupy, their action would have been ultra vires, and the members of the board would have been mere trespassers whom the landlord might eject. But Congress made no such enactment and gave no such notice. They left the law in force which authorized the board to rent offices in the city of Washington at a rental not to exceed $1,800 per annum, and they left the law in force which provided that in the District of Columbia such a tenancy should be terminated only by notice and the surrender of the leasehold, and they left the board in the unquestioned occupancy of the premises, and they authorized a continuation of the occupancy after the expiration of the fiscal year by the Joint Resolutions 1st July, 1886,15th July, 1886 (24 Stat. L., 343, 345), which continued “all appropriations for the necessary operations of the Government under existing laws” to and including the 31st day of July, 1886. The first intimation given by the tenant to the landlord of an intent to vacate the premises and terminate the lease was by the Sundry Civil Appropriation Act 4th August, 1886 (24 Stat. L., 222), which failed to appropriate for the existing or future expenses of the board. Then the first day on which the tenancy could be terminated according to the law of the District of Columbia was the 30th September next ensuing.
The case then stands in this plight: Congress authorized a. renting of the premises and from time to time specifically *460 appropriated, for the payment of the rent. These appropriations for rent as rent continued until the 31st March, 1885. For the three months, April, May, and June, 1885, no appropriation was made and no rent was paid. For the fiscal year ending- June 30,1886, and for the month of July, 1886, a general appropriation “for salaries and expenses” was made and the rent was paid. For the months of August and September, 1886, there was no appropriation, and the rent remains unpaid. All the way through the period of occupany, from the 1st October, 1879, to the 30th September, 1886, there was a statute unrepealed which authorized the board to rent a building for one year at a rental not to exceed $1,800 per annum, On the 4th August, 1886, that authority may be said to have expired. But its cessation then could not operate retroactively nor affect the legal rights of a party who had contracted on the faith of the statute and whose contract was within its limitations.
This case is neither identical with nor similar to that of Dunwoody (supra), though both are founded on statutes relating to the National Board of Health, for in Hun woody’s Case there was no statute expressly authorizing the contract; i. e., there was no statute which authorized the Board of Health to contract with the claimant for his services at a specified salary and for a specified period. The outlay for expenses, of which his remuneration was an item, was limited to specified amounts. The claimant was the responsible officer of the board, directly chargeable with knowledge of the limitations set upon its expenditures by Congress and of the condition of the fund, and he was bound thereby. In this case the claimant parted with an estate in real property upon the faith of an act of Congress, the statute continued unrepealed, possession continued undisturbed, the rental was within the authorized terms of the statute, and the liability of the defendants was established as well as limited by the law which Congress made.
And between the statutory bases of the two cases there is also a wide difference. In the Dunwoody Case the question was whether the National Board of Health had authority to continue a salary at a rate previously fixed, irrespective of the intent of Congress to diminish and limit the expenditures of the board. The Supreme Court answered the question by saying that the subsequent “ enactments evinced the purpose *461 upon tbe part of Congress not to create any liability upon tbe part of tbe United States in respect to work of tbe National Board of Health beyond tbe amounts specifically appropriated by it from time to time for that work.” In tbis case there is no sucb question. On tbe contrary, Congress have “ specifically appropriated from time to time ” for tbis rent, and have never evinced a purpose to diminish tbe rent or during the existence of tbe board to terminate tbe tenancy. During a period running from tbe 1st of October, 1879, to tbe 1st of October, 1886, they have appropriated money for tbe payment of rent, generally by specific appropriations, once by a fund out of which it could be and was paid. Tbe only exceptions to tbis during tbe seven years of tbe tenancy was a failure to appropriate for three months’ rent in 1885 and for two months’ rent in 18S6. A failure to appropriate does not affect a legal right, and a trivial, exceptional failure to appropriate evinces no purpose on tbe part of Congress. In tbe case of United States v. Langston (118 U. S., 389), tbe Supreme Court said: * * Tbe court is of opinion that, according to tbe settled rules of interpretation, a statute fixing tbe annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years and which contained no words that expressly, or by clear implication, modified or repealed tbe previous law.” Much less can it be said here that Congress intended to annul a valid contract because they failed to appropriate for tbe fourth part of tbe annual rent in one year and for tbe sixth part of it in another.
Tbe payment or advancement of tbe rent for tbe three months in 1885 by members of tbe board seems to tbe court to be res inter alios acta. If there bad been a fund provided by Congress out of which tbe rent could have been paid, and tbe members of tbe board bad expended it for other purposes, it might be maintained that they could not in tbis indirect way exceed tbe amount appropriated by Congress; but there is no basis for that contention, inasmuch as in that fiscal year Congress appropriated specifically for rent and did not provide a fund out of which tbe rent for these three months could properly have been paid.
Tbe judgment of tbe court is that tbe claimant recover $530.