Booth, Judge,
delivered the opinion of the court:
The defendant leased from the plaintiff, a New Jersey corporation, the premises described in the findings. The transaction was the restilt of a desire upon the part of the defendant to own and operate its own laundry during the war period. The plaintiff owned both the laundry equipment and the premises wherein it was located. The defendant purchased the equipment and continued to operate the laundry upon the same premises under the lease involved. Payments of rental were regularly made under the leases and the difficulty out of which this case arises is confined to the last two months of the term of the lease and the clause respecting repairs and maintenance of the premises in good *297 condition. The final lease, exact in terms with prior leases except as to increased rental, expressly imposed upon the defendant ,the obligation of keeping the premises in good repair “to the satisfaction of the Government officer in charge.”
The findings show, and it an undisputed fact, that the defendant, through a properly constituted board, found that to place the premises in good repair would require an expenditure of $5,067. We say this board was properly constituted. Capt. Eobert B. Field was at the time the assistant depot quartermaster at Governors Island and in charge of all the Government leases and buildings within the New York depot area, and he it was who assembled the board, he himself, as the officer in charge, being a member of the board. For some reason not of record the War Department refused to allow the recommendations of the board. It is difficult to perceive a defense to this item of the claim. The defendant does not contest the extent of damage and 'the proof clearly sustains the unusual and emergency character of the use to which the premises were put. The terms of the leas'e are plain and free from ambiguity. The officer in charge has acted, and we think the right of recovery is too plain to warrant extended discussion.
On December 27, 1921, the defendant, through the officer in charge, Captain Field, notified the plaintiff that the premises would be surrendered to him on March 31, 1922. The lease required a 90-day notice of determination to quit— a right reserved by the defendant and which might be exercised at any time during the period of the lease. The plaintiff received, acknowledged, and acquiesced in this notice. Subsequently, on January 16, 1922, Captain Field forwarded to the plaintiff another notice undertaking to relinquish the premises and terminate the lease on January 31, 1922. This notice, while received by the plaintiff, was not acknowledged or acquiesced in by him. Notwithstanding both notices, the defendant did not act in accord with either; on the contrary, possession of the premises was retained by the defendant until May 15, 1922. The defendant paid the monthly rental stipulated in the lease except for the months of May and June, 1922. Pro rata rental was tendered the plaintiff for *298 one-half the month of May and payment refused for the entire month of June, 1922. If the plaintiff’s contention is sustainable under, this' item, the amount involved is $1,666.66. Defendant contests judgment for this amount upon the .theory that the 90 days’ notice — i. e., the first notice given— terminated the léase on March 31, 1922, and thereafter the landlord simply suffered the tenant to hold over. We confess some inability to follow the argument. The lease expressly provides a mode and manner for its termination, the lessee gives' the required notices in the proper, manner and then disregards its contractual obligations to observe what it has done. Therefore the lessor, helpless in the premises, is to be penalized for observing his obligations under the lease. If the defendant intended to vacate the premises' and take advantage of a unilateral provision of the contract beneficial to it, the way was open and the course prescribed. Defendant observed the formal part of the lease and disregarded the obligation to vacate, but continued in possession until it found a convenient time to get out. The record unmistakably indicates that the plaintiff was faced with a situation which may or may not have arisen subsequent to the giving of the notice, which rendered compliance therewith imposible, and continued possession under the lease obtained. It is rather a strange doctrine that a lessee may terminate a lease by a written notice and then hold over under a different tenure and defeat the payment of rental for the contract period. This lease was incapable of termination except as therein provided, “ 90 days’ notice of intention to terminate.” If the date of termination ai'rived during a monthly period, pro rata rental accrued for the portion of time the premises were occupied, otherwise not. A notice without action in accord therewith, as said by this court in Spofford v. United States, 32 C. Cls. 452, 459, “ would be valueless.” See also King-Durkee Co., 126 Minn. 452; O'Brien v. Clement, 160 N. Y. S. 975.
Plaintiff is entitled to recover. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Ghief Justice, concur.