Davis, J.,
delivered the opinion of the court ;
The National Board of Health was established by an act approved March 3,1879 (Supp. Rev. Stat., § 480, and 20 Stat. L., 484), which provided for seven members, to be appointed by the President, by and with the advice and consent of the Senate, whose compensation, “ during the time when actually engaged in the performance of their duties,” was to be $10 per diem each and reasonable expenses; certain officers of the Government were also to participate in the work without compensation, and the duties of the Board were defined as being to obtain information upon all matters affecting the public health, to advise the several Departments of the Government, the executives of the several States, and the Commissioners of the District of Columbia on all questions submitted to them, or whenever in the opinion of the Board such advice may tend to the preservation and improvement of the public health. The act also contained other provisions not important for our present purpose.
The next statute on this subject was approved June 2, 1879 (Supp. to R. S., § 485, and 21 Stat. L., 5); this was a national quarantine act, and empowered the Board of Health to render aid to State and local boards of health and to local quarantine stations in carrying out their rules and regulations to prevent the introduction and spread of contagious and infectious diseases. The eighth section of this statute appropriated $500,000 “to meet the expenses to be incurred in carrying out [its] provisions,” to be disbursed under the direction of the Sec *277 retary of the Treasury on estimates to be made by the Board of' Health and approved by him, while the tenth section provided that the act should “ not continue in force for a longer period than four years,” that is, longer than June 2,1883.
. Another act, of July 1, 1879, after making appropriation for the rental of offices, for the printing and binding of reports, and for the services of a stenographer, provided that (Supp. Rev. Stat., § 500, and 21 Stat. L., 46)—
“ The chief clerk of the National Board of Health shall act as disbursing agent for the Board, and shall give bond, con-formably to section one hundred and seventy-six of the Bevised Statutes, for the faithful performance of that duty, and for that service he shall receive three hundred dollars per annum in addition to his salary as chief clerk, and the Board of Health may, with the approval of the Secretary of the Treasury, pay to its secretary such sum, in addition to his pay as a member of the Board, as it may deem proper, not exceeding one hundred dollars per month.”
In this act for the first time is any mention made of a chief clerk, yet claimant had been appointed to that position the 5th of the preceding April and had since performed its duties. After the passage of this act claimant qualified as disbursing officer. In October, 1884, claimant received a recess appointment as a member of the Board, which was replaced in December by an appointment by and with the advice and consent of the Senate, and he was appointed and acted as secretary of the Board and as its disbursing agent. Congress having failed fo appropriate at various times money to compensate claimant for his services, he demands in this action sums alleged to be due him as chief clerk, disbursing agent, secretary, and a member of the Board.
The seventh section of the act last cited contained a provision “ that all the moneys hereinbefore authorized to be expended, and all contracts made and liabilities incurred by the National Board of Health, shall be paid out of the appropriation of $500,000 made in the act of Congress ” approved June 2,1879.
The'sundry civil act, approved June 3.6, 1880, contained a provision “for salaries and expenses of the National Board of Health, and to carry out the purposes of the various acts creating the National Board of Health, seventy-five thousand dollars, or so much thereof as is necessary,” coupled with the *278 provision that $25,000 of the $500,000 appropriation of June-2, 1879, should “ be applied to the same purposes ” (21 Stat. L., 266). The next sundry civil act, approved March 3,1881 (21 Stat. L., 442), contains an appropriation of $75,000 made-in the same words, with the provision that $50,000 of the appropriation of June 2,1879, should be applied to the same purposes, “and no more money shall be expended for the above purposes out of any appropriations heretofore made or by virtue of any previous law.”
The next sundry civil bill, approved August 7,1882 (22 Stat. L., 315), contains the first specific allowance for clerk hire found in the laws. This act makes the following provision:
“For salaries and expenses of the National Board of Health as follows:
“For pay and expenses of the members of theNational Board of Health, ten thousand dollars. For pay of secretary" and disbursing agent, and pay of clerks, messengers, and laborers, five thousand five hundred dollars. For rent, light, fuel, furniture, stationery, telegrams, and postage, two thousand dollars. For miscellaneous expenses, five hundred dollars.”
The act prohibited the expenditure of other public money than that therein appropriated for the purposes of the Board of Health, and limited the duties of the Board to the diseases* of cholera, small-pox, and yellow fever.
The sundry civil act approved March 3,1883, made the single appropriation of $10,000 for compensation and personal expenses of members of the Board (22 Stat. L., 613). No appropriation appears in the sundry civil bill of the succeeding year,' but the deficiency bill contains an appropriation for salary of the secretary of the Board from April 3,1884, to March 1, 1885, $3,135 (23 Stat. L., p. 452), also for pay of messenger and for rent. No appropriation has since been made for the National Board of Health, except a small balance of $60 allowed by the First Comptroller, and contained in a deficiency bill (24 Stat. L., 289).
To the claimant’s demand the Government interposes a counter-claim, based upon the following theory :
That the payment of salary as chief clerk was not authorized or permitted by law, and that, as the Secretary of the Treasury coupled the designation as disbursing officer with the condition that the duties should be discharged “without pay,” all moneys *279 received by claimant in either capacity are recoverable by the United States.
The act of March 3,1879, establishing the Board, placed upon them duties of a nature necessarily involving the employment of clerical assistance. They were to make examinations and investigations, to frame rules and regulations, to obtain information, to give advice, to consult with the principal sanitary organizations, to report to Congress a full statement of their transactions, together with a plan for a national public health organization, and for all these duties a sum of money was appropriated “to pay the salaries and expenses of said Board and to carry out the purposes of this act.”
The duties of the Board clearly required the employment of clerks, and when Congress appropriate money to pay expenses they must be assumed to mean those expenses which are necessarily incident to the work they direct to be done. Where a duty is placed upon an officer the performance of which necessarily involves travel, or clerk hire, or office rent, then a broad provision for expenses will include the cost of such travel, clerk hire, or office rent. But this case is even stronger, for after claimant had been appointed, after he had for some four months been performing the duties of chief clerk, Congress recognized his official position, and impliedly approved the payment to him of a salary when it directed that he should also act as disbursing agent and receive pay for that service “in addition to his salary as chief clerk.”
Nor was the money received by him as disbursing^ agent, while also acting as chief clerk, improperly paid, for'the appropriating statute placed no discretion either in the Secretary of the Treasury or in the Board of Health on the subject. It says, “ shall receive three hundred dollars per annum in addition to his salary as chief clerk,” not “may” receive, nor “shall receive in the discretion of the Secretary of the Treasury”$ but its form is mandatory, and the Secretary could not change it without the assent of claimant. The fact that payment was regularly made on this account from July 1, 1879, to June 30, 1883, shows not only that claimant did not agree to waive his statutory right, but furnishes a consistent and contemporaneous construction of the agreement by the Treasury Department extending over four years, a construction favorable to the claimant’s contention here. No argument adverse to the claimant *280 can be drawn from the provisions of section 176 of the Revised Statutes, conformably to which claimant was to give bond as disbursing agent. It is true that the section provides for the appointment as disbursing agent of fourth-class clerks only, but that condition was changed in this instance by the express command of Congress contained in the act of July 1,1879, directing that claimant should be appointed such agent, and that his bond should be furnished “conformably” to section 176 — that is, it should follow section 176 as nearly as the altered circumstances of the case would permit.
Nor do we agree with the defendants that section 3679 of the Revised Statutes applies to this case; this section prohibits any Department, from making an expenditure in one fiscal year of a sum in excess of appropriations made for that year, or from involving the Government in any contract for the future payment of money in .excess of such appropriations. The facts do not show that either of these prohibited acts were committed;
Section 3682 forbids the use of money appropriated for contingent, incidental, or miscellaneous purposes, for official or clerical compensation, and this is the only section relied on by defendants which seems to us to touch this cáse. The adjectives contingent, incidental, and miscellaneous, as used in appropriation bills to qualify the word expenses, have a technical and well-understood meaning; it is usual for Congress to name the principal classes of expenditure which they authorize, such as clerk hire, fuel, light, postage, telegrams, &c., and then to make a small appropriation for the minor and unimportant disbursements incidental to any great business, which cannot well be foreseen and which it would be useless to specify more accurately. For such disbursements a round sum is appropriated under the head of “ contingent expenses,” or “ incidental expenses,” or “miscellaneous expenses.” Such appropriations the law says shall not be used for clerk hire. So, in the appropriation act of 1882 (supra) Congress appropriated for pay and expenses of members of the Board; for pay of secretary aDd disbursing ageBt; for pay of clerks, messengers, and laborers; for rent, light, fuel, stationery, telegrams, and postage, and for “ miscellaneous expenses.” It is clear that specific appropriation being made for clerks, messengers, laborers, rent, light, fuel, stationery, telegrams, and postage, no disbursement can be made for any such expense from the appropriation for “ mis *281 cellaneous expenses ” which, covers non-ennmerated petty disbursements necessarily made in performance of the duties imposed bylaw. Claimant, however, was not paid under a statute similar in form to this. The act of March 3,1879, made an appropriation “ to pay the salaries and expenses of [the] Board, and to carry out the purpose of [the] act,” not the contingent, incidental, or miscellaneous expenses incurred by the Board, but the expenses, and the expenses necessary to carry out the purpose of the act. Clerk hire was a necessary expense for this purpose.
The act of June 2,1879, which places important duties upon the Board of Health, duties which could not be performed without clerical assistance, appropriates $500,000 to meet the expenses to be “incurred in carrying out” its provisions. Congress, in the act of July 1,1879, giving the claimant pay as disbursing agent “in addition to his salary as chief clerk,” recognized and approved his appointment and the payment to him of salary; while the Treasury Department has followed the same course during the years when money was available from which to pay him.
We are of opinion that the Government cannot recover back the moneys paid claimant, and the counter-claim will be dismissed.
The claimant’s demands are embraced in four separate heads: Salary as chief clerk, salary as disbursing agent, salary as secretary of the Board, and salary as a member of the Board. As to these it will be noticed that the only office created by law, with a compensation fixed by law, is that, of member of the Board. The chief clerk was an officer created by the Board itself, not by Congress; his salary was fixed by the Board and not by Congress, and was payable out of a general fund appropriated for expenses. The claim therefore does not fall within the principles of Langston's Case (118 U. S. R., 389; 21 C. Cls. R., 10), but is more similar to Mitehell's Case (109 U. S. R., 146). A fund was given the Board to disburse; under this power the claimant was employed; but his right to salary could not extend further than the appropriations made from time to time by Congress, and when Congress ceased to appropriate he was without claim to further compensation. He did not hold an office, but was an employé, whose only right to compensation rested on the appropriation acts.
*282 Nor do we consider that any statutory office of disbursing agent was created by the Act of July, 1879 (21 Stat. L., 46). ■That act directed the chief clerk to act as disbursing officer j, but the wording of the law does not seem to indicate a purpose of Congress to create an office, as was done in Langston’s Case, but to give authority to a designated individual to perform a certain class of service for a compensation fixed.
There is no provision of law establishing the position of secretary of the Board, although section 5 of the Act of July 1, 1879 (Supp. Rev. Stat., 500, and 21 Stat. L., 46), authorizes the Board of Health, with the approval of the Secretary of the Treasury, to pay its secretary such sum in addition to his pay as a member of the Beard as it may deem proper, not exceeding $100 per month.
The statute creating the Board, that of March 3,1879 (Supp. Rev. Stat., 480, and 20 Stat. L., 484), provides:
“That there shall be established a National Board of Health to consist of seven members, to be appointed by the President, by and with the advice and consent of the Senate, * * * whose compensation, during the time when actually engaged in the performance of their duties under this act, shall be $10 per diem each and reasonable expenses.”
Under the principle of Langston’s Case this is the creation by statute of an office with a fixed compensation, which claimant is entitled to receive, unless some action by Congress has deprived him of that right. The Supreme Court has announced as law:
“That a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years, and which contained no words thatexpressly or by clear imjfiication modified orrepealed the previous law.” (Langston's Oase, supra.)
The Supreme Court has also said:
“ The whole question depends on the intention of Congress as expressed in the statutes. Whether a simple failure by Congress to appropriate any or a sufficient sum to pay the salary of an officer fixed by previous law is of itself an expression of purpose by Congress to reduce the salary, we do not now decide. That is not this case. On the contrary, in this case Congress has in other ways expressed its purpose to reduce for the time being the salaries of the interpreters. This purpose is, of course, irreconcilable with the provisions of the Be- *283 vised Statutes on the same subject; and those provisions must be considered as having been suspended until they were finally repealed; * * * As the appellee has been paid in full his salary as fixed by the later acts, which were in force before and during, and continued in force after, his term of service, he has no cause of action against the United States. (Mitchell’s Case, 109 U. S. R., 146.)
While the act of March, 1879, organizing the Board created offices, the subsequent legislation of Congress develops a policy at variance with the theory upon which the Board was brought into existence. The Quarantine Act of June, 1879, out of which much of the expense was paid, terminated by express terms in June, 1883. The act of July, 1879, charged all expenditures of the Board to the fund provided in the Quarantine Act of the June preceding, the act last referred to, while the Act of March 3, 1881 (21 Stat. L., 442), after providing for the salaries and expenses of the National Board of Health, and for carrying out the various acts creating it, contains this significant clause: u And no more money shall be expended for the above purposes out of any appropriation heretofore made, or by virtue of any previous law ”; and the Act of August 7, 1882 (22 Stat. L., 315), prohibits the expenditure for the purposes of the Board of Health of other public moneys than as therein appropriated. Whatever rights existed in the members of the Board by virtue of the organizing act were taken away when these acts were approved by the President. From that day on the Board became subject to such grants as Congress might from time to time make in appropriation bills, and its members were divested of any continuing right in law. The provision is broad and explicit, “ No more money shall be expended for the above purposes,” that is, for salaries and expenses of the Board; and this prohibition not only covers any appropriation theretofore made, but also any expenditures that might be made “ by virtue of any previous law.” The course of legislation in regard to this Board shows a change of policy on the part of Congress, and an intention to place the members of the Board and its expenses within the control of. the annual appropriation bills.
The petition and the counter-claims are dismissed.