Allen, J.
 

 Is a county board of education required to pay contribution into the employers’ accumulation fund of the state teachers’ retirement system, upon receiving from the retirement board of the state teachers’ retirement system certification of amounts due from such county board under the state teachers’ retirement act? This is the question here before us. To decide this question requires consideration of the statutes involved.
 

 The Eighty-Third General Assembly of Ohio passed an act “to provide a statewide retirement system for teachers in schools supported wholly
 
 *334
 
 or in part by public funds.” 108 Ohio Laws, pt. 1, p. 195. This act is to be found in the General Code of Ohio as Section 7896-1
 
 et seq.
 

 In this act a “teacher” is defined as “any teacher or other person regularly employed in the public schools of the state of Ohio, who is required by law to have a teachers’ certificate *
 
 *
 
 Section 7896-1.
 

 In the instant case the employes of the county board of education, namely, a county superintendent and assistant county superintendents, are the individuals for whose benefit payment into the employers’ accumulation fund is claimed. It is evident, and, indeed, is not disputed, that these employes of the county board of education are “teachers” within the statutory definition and are entitled to the benefit of the act. In the same statute an “employer” is defined as “the board of education, school district or other agency within the state of Ohio by which a teacher is employed or paid.” Section 7896-1.
 

 Under Section 4744-2, General Code, definite provision is made for the employment and payment of the county superintendent and assistant county superintendents by the county board of education, and hence the county board of education is an “employer” within the meaning of this act.
 

 Under Section 7896-2, General Code, the fund created under the state teachers’ retirement system is placed under the management of the retirement board, the plaintiff herein.
 

 Sections 7896-43 and 7896-40 provide for a contribution to the teachers’ savings fund by every
 
 *335
 
 teacher who is a member of the retirement system. This contribution amounts to 4 per cent, of the teacher’s earnable compensation not exceeding $2,-000 per annum, and is deducted by the employer from the compensation of ' each contributor. The money thus deducted from the earnable compensation of the teacher is placed to the credit of the teacher in an individual account, and in case of withdrawal from the service is returned to him upon demand made anytime within 10 years. Ten years after such cessation of service, if no demand has been made, the accumulated contributions shall be returned to the contributor or his personal representatives.
 

 'Section 7896-44 provides:
 

 “Each employer of a teacher who is a member of the retirement system shall pay to the employers’ accumulation fund a certain per centum of the earnable compensation of each such teacher to be known as the ‘normal contribution’ and a further per centum of the earnable compensation of each such teacher to be known as the ‘ deficiency contribution.’ The amount paid by an employer on account of the deficiency contribution shall after the first payment be at least three per centum greater than the amount paid by him during the preceding year. The rates per centum of such contributions shall be fixed on the basis of the liabilities of the retirement system and shall be certified to the employers by the retirement board after each actuarial valuation. Until the'first such certification, the normal contribution shall be two and eight-tenths per centum of the members’ salaries and the deficiency contributions shall be two
 
 *336
 
 and seventy-seven hundredths per centum of the members’ salaries.”
 

 Section 7896-45 provides how the “normal contribution rate” shall be determined, and that after its determination the rate shall be certified to the employers by the retirement board and shall continue in force until a new valuation and certification.
 

 Section 7896-46 provides the manner in which the “deficiency contribution” shall be determined.
 

 Section 7896-47 provides as follows:
 

 “Each employer shall pay annually into the employers’ accumulation fund, in such monthly or less frequent installments as the retirement board shall require, an amount certified by the retirement board which shall equal the per centum of the total compensation, eamable by all contributors during the preceding school year, which is the sum of the two rates per centum hereinbefore described and required to be computed, to-wit, the sum of the normal contribution rate plus the deficiency contribution rate. The aggregate of all such payments by employers shall be sufficient, when combined with the amounts in the employers’ accumulation fund, to provide the pensions payable out of the fund during the year then current, and if not, the additional amount so required shall be collected by means of an increased rate per centum of the deficiency contribution which shall be certified to the employers by the retirement board and shall continue in force for the period of one year.”
 

 Under Section 7896-49, the teacher, as a condition of employment is required to accept the pro
 
 *337
 
 visions of this act, and the act becomes a part of the teacher’s contract.
 

 ■Section 7896-52 provides that each employer shall certify to the treasurer of the said employer on each and every pay roll a statement as voucher for the amounts deducted from the pay roll of every contributing teacher as the contribution to the teachers’ savings fund, and shall also certify a statement for the amount of the normal contribution and the deficiency contribution payable by the employer.
 

 Section 7896-53 provides that the treasurer of each employer on receipt from the employer of the voucher for deductions from the salaries of teachers and for the contribution of the employer, shall transmit the amounts specified in such voucher to the secretary of the retirement board, who shall pay them to the treasurer of the state of Ohio for use under the act.
 

 The two foregoing sections do not apply to county boards of education, because they have no treasurer, and hence these two sections do not control this case.
 

 Section 7896-55 provides for the levy of taxes by employers who obtain funds directly by taxation to provide the additional funds necessary to meet the financial requirements imposed upon them by the act. This section does not apply to county boards of education because they do not obtain funds directly by taxation, and hence does not control this case.
 

 Section 4728 provides for the control of county school districts by a county board of education.
 

 Under Section 4744-1 the salary of the county
 
 *338
 
 superintendent, appointed by the county board of education, is to be paid out of the county board of education fund on vouchers signed by the president of the board; half of the salary up to the amount of $2,000 being paid by the state. A similar provision with regard to the salary of assistant county superintendents is made in Section 4743 (109 O. L., 243). Bach of these sections provides that the part of this salary paid by the county school district shall be prorated among the village and rural school districts in such county school district in- proportion to the number of teachers employed in each district, except that in the case of the county superintendent the funds available from the dog and kennel fund or from any other funds not already appropriated must be used before such proration may be made.
 

 Section 4744-3 provides as follows:
 

 “The county auditor when making his semiannual apportionment of the school funds to the various village and rural school districts shall retain the amounts necessary to pay such portion of the salaries of the county and district superintendents and for contingent 'expenses, as may be certified by the county board. Such amount shall be placed in a separate fund to be known as the ‘county board of education fund.’ The county board of education shall certify under oath to the state auditor the amount due from the state as its share of the salaries of the county and district superintendents of such county school district for the next six months. Upon receipt by the state auditor of such certificate he shall draw his warrant upon the state treasurer in favor of the conn
 
 *339
 
 ty treasurer for the required amount; which shall be placed by the county auditor in the county board of education fund.”
 

 The county board of education fund, in addition to being replenished from the county school funds and from the state school funds as above set forth, may receive revenue from the dog and kennel fund, at- the direction of .the county commissioners, under Section 5653, General Code, and from the collection. of fees from applicants at school examinations under Section 7820.
 

 Defendants argue that the retention of the amount herein claimed, by the county auditor, upon certification by the county board of education, and payment of the same into the employers’ accumulation' fund, will violate Section 5, Art. X, of the Ohio Constitution, and Section 5, Art. XII, of the same instrument. These two sections read as follows:
 

 'Section 5, Art. X:
 

 “No money shall be drawn from any county or township treasury, except by authority of law.”
 

 Section 5, Art. XII:
 

 “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
 

 Taking up these propositions in their inverse order, we shall first consider whether the state teachers’ retirement act violates Section 5, Art. XII, of the Constitution. This contention is answered by the section itself, which relates only to the levy of a tax or to the imposition of a tax by law. No levy of a tax and no imposition of a
 
 *340
 
 tax, actual or contemplated, is involved in this case. The pleadings set out facts which relate merely to the disposition of school funds raised mainly by taxation and from the school examination receipts and partly perhaps from the dog and kennel fund.
 

 Examining next the provisions of Section 5, Art. X, which are claimed to be violated in this act, we find two limitations therein provided: One, that no money shall be drawn “from any county or township treasury”; the other that money shall not be so drawn except “by authority of law.”
 

 But will money be drawn from a county or township treasury if this writ shall issue? Inasmuch as the funds deducted are derived from levies by various boards of education, how do they constitute a part of the money of any county or township treasury? It is true that the county officials oollect and hold these taxes, but they collect and hold them only on behalf of the various school districts. The “county or township treasury” means not the physical place of deposit, but the funds deposited to the credit of the county or township. Therefore, if this writ issues, no money will be drawn from any county or township treasury. It will be drawn from a fund of the school districts placed for safe-keeping in the custody of the county officials.
 

 Further, is there authority of law for the deduction contemplated? Defendant’s argument that the payment of these contributions is unconstitutional as being unauthorized by law is based apparently upon two propositions: One, that no mandatory duty is imposed upon any officer to pay
 
 *341
 
 the county board of education’s proportion of the expenses imposed by the Retirement Act; the other, that the county board of education has no right of direct levy by taxation from which to obtain funds required to pay the normal and deficiency contributions.
 

 If a mandatory duty is imposed upon any officer to make this payment, it must be found in Sections 7896-44 and 7896-47. Without repeating these sections, which are given above, each of them provides in mandatory phrase for the payment by each employer of the normal contributions and the deficiency contributions in the amount certified by the retirement board.
 

 It is true that a county board of education has not a treasurer and therefore cannot avail itself of Section 7896-52, which provides that each employer shall certify .to its treasurer a statement on its pay roll as voucher for the amount of the normal contribution and the deficiency contribution. But Section 4744-3 requires the county auditor to retain such amounts necessary to pay the salaries of the county and assistant county superintendents and for contingent expenses, as the county board may certify.
 

 If this section authorizes the county board to secure funds to pay the contributions to the, employers’ accumulation fund, defendants’ contention as to the lack of direct levy to defray the contributions is untenable, for, even if not provided for by specific levy for that purpose, the expenditure will be “authorized by law.”
 

 Sections 7896-44 and 7896-47 impose the man
 
 *342
 
 datory duty of payment upon the employer, in this case the county hoard of education.
 

 Section 4744-3 imposes the mandatory duty of retention of the amounts necessary to pay these contributions, if certified by the county board, and if included in contingent expenses. These three sections together impose the duty and indicate the source of payment. If authority exists in the statute for the payment of these normal and deficiency contributions by county boards of education, which can levy no tax, it exists in the requirement that the county auditor retain amounts certified as ‘ ‘ contingent expenses.”
 

 Defendants urge that the deficiency and normal contribution cannot be classed as “contingent expenses,” claiming that a contingent expense is an accidental or unforeseen expense, and that payments under the state retirement system being steady and foreseen can hardly be included in “contingent expenses.”
 

 Plaintiff maintains that “contingent” in Section 4744-3 does not.mean “unforeseen” but “general” or “ miscellaneous. ’ ’
 

 Looking to the statute we find that under Section 4744-3 the county auditor is required to pay into the county board of education fund “contingent expenses, as may be certified by the county board.” The Legislature placed no limitation upon the authority of the county boards in certifying “contingent expenses.” It did not even define the term “contingent expenses.” It gave the auditor no discretion whatever, requiring him to retain all expenses certified by the county board as contingent. So far as defined in the statute,
 
 *343
 
 then, expenses certified to the county auditor by the county board of education are to be considered as “contingent expenses” if made for a legitimate school purpose.
 

 Contributing to a state teachers’ retirement fund is a proper expenditure of money for a school purpose. Such a retirement system increases the morale and tends to raise the standard of the teaching force. Under the meaning of the phrase as used in the act, therefore, the amounts which the county board of education failed to pay in the present case may properly be classed as “contingent expenses.”
 

 It will be observed that the expenditure here contemplated is $2,025, and comprises a deficiency for the past three years — that is, the size of the expenditure alone is not so great in any one year as to necessitate authorization by the Legislature as one separate item.
 

 Let us next inquire how the Legislature itself handles these contingent expenses. Does the disposition of them, which is made in the statutes, indicate that the Legislature used the word “contingent” in this particular section as meaning “uncertain” and “unforeseen,” or as meaning “general” or “miscellaneous”?
 

 In certain sections the Legislature definitely provides for expenditures by the county board of education. Section
 
 4744-3a
 
 provides for the printing of programs, examination supplies, and for other necessary printing. These expenditures may be called incidental, but they cannot be called unforeseen. They are steady, and in that sense are a fixed charge. The county board of education in
 
 *344
 
 the same section is authorized to pay the expenses of its educational meetings, which also are a fixed charge. No method of defraying these expenditures is specified. The only way in which the county board of education can defray these expenses is to certify them to the auditor as “contingent” under Section 4744-3.
 

 A still more important expenditure, however, which is authorized to be made by the county board of education, is to be found in Sections 7654-1 and 7654-5. These sections read as follows:
 

 Section 7654-1: “County boards of education may establish county normal schools in districts maintaining first grade high schools for the training of teachers for village and rural schools. Not more than one such normal school shall be established in any county school district. * # *
 

 “The board of education of the district in which the normal school is located shall furnish suitable room or rooms and provide such furniture as may be required by the superintendent of public instruction. The county board of education shall furnish such other equipment as may be necessary. The local expense of maintaining the normal school in each county shall be paid by the county board of education from its contingent fund.” (108 pt. 1, v. 233; 104 v. 155.)
 

 Section 7654-5: “The county board of education of any county school district that maintains a county normal school approved by the superintendent of public instruction shall fix the salary of the director and other instructors and shall receive from the state one thousand dollars to be applied to the payment of the salary of the director
 
 *345
 
 and five hundred dollars to he applied to the payment of the salary of each additional instructor. Such amount shall be allowed by the auditor of state upon the approval of the superintendent of public instruction. All expense in excess thereof shall be paid by the county board of education from its contingent fund.” (108 pt. 1, v. 234; 104 v. 156.)
 

 In these sections the Legislature authorizes the payment of this important and steady item of expense for the county normal school out of the contingent fund. It is true that with this definite authorization it cannot be contended that it would be illegal for the county auditor to retain money out of the contingent fund for the purpose of running the county normal school. However, if the Legislature did not consider the contingent fund as being a general or a miscellaneous fund, out of which expenses not easily lumped together might be paid, why authorize the payment from this fund? “Contingent fund,” in 'Sections 7654-1 and 7654-5, in fact seems to be used as the equivalent of “county board of education fund,” there being no “contingent fund,” nor any fund, provided from which to defray expenses of the county board of education except the “county board of education fund.”
 

 In other words, the Legislature itself, by its treatment of this “contingent” fund, indicates that it uses the word in Section 4744-3 in the sense of “miscellaneous” or “general,” and inserted the phrase in the statute not as meaning merely “accidental” or “unforeseen” expenses, but as covering all general expenditures of county boards of
 
 *346
 
 education besides that for tbe salary of county and assistant county superintendents.
 

 It is in line with this construction that the federal court of claims held, in
 
 Dunwoody
 
 v.
 
 United States,
 
 22 Ct. Cl., 269, at page 280 (affirmed by the Supreme Court in 143 U. S., 578, 12 Sup. Ct., 465, 36 L. Ed., 269), as follows:
 

 “The adjectives contingent, incidental, and miscellaneous, as used in appropriation bills, to qualify the word expenses, have a technical and well-understood meaning; it is usual for Congress to name the principal classes of expenditure which they authorize, such as clerk hire, fuel, light, postage, telegrams, etc., and then to make a small appropriation for the minor and unimportant disbursements incidental to any great business, which cannot well be foreseen and which it would be useless to specify more accurately. For such disbursements a round sum is appropriated under the head of ‘contingent expenses,’ or ‘incidental expenses,’ or ‘miscellaneous expenses.’ ”
 

 That is, th.e Supreme Court of the United States treated the word “contingent” in the
 
 Dumvoody case
 
 as being practically synonymous with miscellaneous.
 

 We hold, therefore, that the payment sought is “authorized by law,” and does not conflict with Section 5, Art. X, of the Constitution.
 

 Defendants finally argue that the enactment of the state Teachers’ Retirement Act impairs the obligation of contract in that it compels all boards of education to contribute to such fund. However, since the pleadings set up no contract between the county board and any other party which
 
 *347
 
 existed prior to the passage of the act, this contention has no weight.
 

 Writ allowed.
 

 Marshall, C. J., Robinson, Jones, Matthias and Day, JJ., concur.
 

 Wan am aker, J., not participating.