

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable V. C. Marshall, Chairman
Texas Soil Conservation Board
P. O. Box 191
Temple, Texas

Dear Sir:

> Opinion No. O-906
> Re: Interpretation of Texas Con-
> servation Law, particularly
> Section 4, Paragraph F.

  We are in receipt of your letter of June 15, 1939, in which you request the opinion of this department upon the following questions:

> "Should certain funds as is provided, be exhausted, may the Board employ contingent funds for such items as may, in the judgment of the Board, be necessary to carry its work forward in an efficient manner?

> "Where may public hearings be held?

> "Will certification of expense account of delegates to district conventions be required?

> "Will Board members, as such, come under Social Security?"

  We shall attempt to answer these questions in the order in which they are asked.

  The appropriation for the use of the State Soil Conservation Board in the administration of the Texas Soil Conservation Law is provided therein. The General Departmental Appropriation Bill of the Forty-sixth Legislature, S. B. No. 427, does not include the State Soil Conservation Board among the state departments and agencies it covers.

Honorable V. C. Marshall, Page 2

38 Tex. Jur. 844:

"The appropriation need not, however,
be made in the General Appropriation Bill,
nor is any particular form of words requir-
ed."

Sections 14 and 14a, of House Bill No. 20, other-
wise the Texas Soil Conservation Law, are the pertinent
parts of the Act. Section 14 calls for the appropriation
of a sum of $10,000.00 for the purpose of creating and main-
taining the State Soil Conservation Board until August 31,
1939. The purposes for which this sum may be expended are
not itemized.

Section 14a provides for the appropriation of
several sums for the two year period beginning September 1,
1939, and ending August 31, 1941. A specific sum is desig-
nated in each instance along with the purpose or purposes
for which it may be expended. Under the heading "Adminis-
trative Expense" a sum of $3,000.00 for the year ending
August 31, 1940, and the sum of $2,500.00 for the year end-
ing August 31, 1941, are earmarked for "Light, Heat, Water,
and Contingent". (Underscoring ours.)

We presume, since this is the only contingent
fund set up for the administration of the act, that your
question pertains to it.

It is, of course, elementary law that money ap-
propriated by the Legislature cannot be used for any other
purpose than that specified in the appropriation bill with-
out constituting a mis-application of public funds.

Conference opinion, Attorney General's Department,
August 18, 1921, by Honorable E. F. Smith:

"It is the law of the State that no part
of the money appropriated by the Legislature
can be used for any purpose other than the specific
purpose named in the appropriation bill. An ex-
penditure for a purpose other than the one for
which the money was appropriated would be a mis-
application of public funds. The Comptroller
would not be authorized to draw his warrant on
any fund for any purpose except the purpose named
in the Act, and the Treasurer would be without

Honorable V. C. Marshall, Page 3

authority to honor a warrant on any fund for any
purpose except that named in the appropriation
bill."

The above opinion quotes from 4 Corpus Juris, p.
1460, as follows:

"An appropriation of funds is an author-
ity from the Legislature, given at the proper
time, and in legal form, to the proper officers,
to apply sums of money, out of that which may
be in the treasury in a given year, to specified
objects or demands against the State; the act
of the Legislature in setting apart or assigning
to a particular use a certain sum of money to be
used in the payment of debts or dues from the
State to its creditors; a setting apart from the
public revenue of a certain sum of money for a
specified object, in such manner that the execu-
tive officers of the government are authorized
to use that money and no more for that object,
and for no other."    (Underscoring ours.)

See also opinion of the Attorney General's Depart-
ment to Honorable George B. Simpson, State Auditor, by Hon-
orable Joe J. Alsup, Assistant Attorney General, dated April
20, 1935, and many other opinions in the files of the Attor-
ney General's Department.

This principle applies to all the several sums of
money set forth in Section 14a and their respective "pur-
poses". In other words, money appropriated for office rent-
al cannot be used to purchase office equipment and furniture,
even if there happens to be a surplus in the former and a
shortage in the latter fund.

As for the "contingent" fund set out under No. 9,
Administrative Expense, the question arises as to what pur-
pose it shall serve.

In Vol. 2, Words and Phrases (First Series), p.
1502, it is said:

"The adjective 'contingent' as used in
appropriation bills to qualify the word 'ex-
penses' has a technical, and well-understood



> meaning. It is usual for Congress to enumerate the principal classes of expenditures which they authorize, such as clerk hire, fuel, light, postage, telegrams, etc., and then to make a small appropriation for the minor disbursements incidental to any great business, which cannot well be foreseen, and which it would be useless to specify more accurately. For such disbursements, a round sum is appropriated under the head of 'contingent expenses'. Dunwoody vs. United States (U.S.) 22 Ct. Cl. 269, 280."

The moneys of a contingent fund are to be used for purposes the Legislature could not foresee or anticipate. No part of it can be used for supplementing the funds appropriated for specific items, for example, salaries, office rental, stationery and printing, etc. Where definite sums are appropriated for specific purposes, moneys in a contingent fund are not available for expenditure in connection with these specific purposes. A "contingent" fund in itself implies unpredictable items of cost and expense. Where the Legislature has foreseen various expenses and provided for them definitely, it is not its intention that moneys in a contingent fund be used for expenses other than those the Legislature failed to foresee. A contingent fund is not available for enumerated expenditures.

Answering your first question, it is our opinion that in the event any of the funds set forth in Section 14a for specific purposes are exhausted, the State Soil Conservation Board is without power or authority to spend contingent funds on said items, the contingent moneys going not for enumerated items or purposes, but for contingencies;not contemplated by the Legislature.

Your attention is called to an opinion of this department by Honorable Edward Clark, dated May 29, 1933, to Honorable George H. Sheppard, Comptroller of Public Accounts, and also Opinion No. 0-184 by Honorable Morris E. Hodges to Honorable George H. Sheppard, Comptroller of Public Accounts.

Your second inquiry is:

"Where may public hearings be held?"



Honorable V. C. Marhhall, Page 5

It appears to us that this question-is fully answered in Paragraph E, Section 4, where the Act reads:

"The State Board shall keep a complete and accurate record of all its official actions, hold such public hearings at such times and places within the State as may be determined by the Board, and shall promulgate such rules and regulations as may be necessary for the performance of the functions of said board under the provisions of this Act. . ." (Underscoring ours.)

In Section5, headed "Creation of Soil Conservation District", it is provided for a "hearing" upon the question of the desirability and necessity of the creation of a soil conservation district where the necessary petition has been filed with the Board. It is not required in the Act that such hearing be held within the confines of the proposed district, but since "all owners of land within the limits of the territory described in the petition, and of lands within any territory considered for addition to such described territory, and all other interested parties, shall have the right to attend such hearings and to be heard", it is apparent that in giving the board a wide discretion in the matter of holding hearings the Legislature contemplated that the board would consider the convenience of the interested individuals or group.

Section 13 of the Act provides that the board may conduct public meetings and public hearings upon petition for discontinuance of a district. Here again the presumption is that the board would call the meeting, or hearing, within the district for the convenience of the land owners and interested parties therein.

Section 8. of the Act authorizes "the supervisors of any district" to hold public meetings and public hearings whenever necessary and the district Board of Adjustment is given a similar power with respect to the petitions of land owners seeking an adjustment under Section 10. Of course, hearings of the district supervisors and Board of Adjustment would be held in the particular district they represented.

Honorable V. C. Marshall, Page 6


Answering your question specifically, it is our opinion that the board is authorized to hold its necessary public hearings at such times and places within the State as it may determine suitable and convenient.

The third question in your request reads as follows:

"Will certification of expense account of delegates to district conventions be required?"

Section 4 provides as follows:

"Members of a county soil conservation advisory committee shall receive no compensation for their services except the delegate to the district convention who shall receive the amount incurred as necessary expenses and $4.00 per day not to exceed two days to be paid by the State Soil Conservation Board created herein."

It is our opinion that this question is answerable in the affirmative. Authority for certification is found in Article 4359, Texas Civil Statutes, as amended, Acts, 1931, the pertinent portion of which reads as follows:

"No warrants shall be prepared (by the Comptroller) except on presentation to the warrant clerk of a properly audited claims, verified by affidavit to its correctness, the proper auditing of which claims shall be evidenced by the initials written therein by the person auditing the same; and such claims so verified and audited shall be sufficient and the only authority for the preparation of a warrant or warrants. . ."

Under the above statute the Comptroller would be prohibited from preparing a warrant to cover a delegate's expense to a district convention unless the expense account was properly itemized and certified.

Finally, you ask if members of the State Soil Conservation Board come under "Social Security".



Honorable V. C. Marshall, Page 7

By "Social Security" we assume you mean the Texas Unemployment Compensation Act, which is the only state legislation commonly designated social security requiring the filing of reports and payments of taxes.

Section 19(G) (5) of the Texas Unemployment Compensation Act, of the Texas Civil Statutes, as amended by the Forty-sixth Legislature, reads as follows:

"The term 'employment' shall not include:

"(A) Service performed in the employ of the State, or of any political subdivision thereof or of any instrumentality of the State or its political subdivisions."

The same exemption is accorded under the pertinent provisions of the Federal Social Security Act. U. S. C. A., Title 42, Section 410 (6) (Federal Old Age Benefit), and Section 1011 (7) (taxes with respect to employment).

The State Soil Conservation Board is undoubtedly an instrumentality of the State, a creature of the Legislature, an agency of the people.

Section 3 (4) states that "Board" or "State Soil Conservation Board " means the agency created in Section 4 of the Act.

Section 3 (9) reads:

"'Agency of the State' includes the government of the state and any subdivision, agency, or instrumentality, corporate or otherwise, of the government of the state."

Consequently, you are advised that members of the State Soil Conservation Board do not come within the coverage of State and Federal Social Security Acts.

Trusting we have answered your inquiries satisfactorily, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

DS:FG
APPROVED JUL. 19, 1939
(Signed) W. F. Moore
FIRST ASSISTANT ATTORNEY GENERAL

By (Signed) Dick Stout
Dick Stout
Assistant

APPROVED OPINION COMMITTEE BY T.D.R. CHAIRMAN