

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 20, 1952

Hon. M. B. McCoy, D. C.
President, Texas Board of
 Chiropractic Examiners
Austin, Texas

Opinion No. V-1423

Re: Legality of defraying from
    Item 6 of the Board's cur-
    rent appropriation certain
    expenses necessary to ob-
    tain evidence of violations
    of the Chiropractic Act.

Dear Sir:

We quote from your request for an opinion of this office:
as follows:

"This Board now has an Investigator checking Chiro-
practic offices throughout the State. Several cases in-
volving a violation of the Chiropractic Law have been
settled and disposed of by suspension and cancellation
of licenses after a hearing conducted by the Board under
the provisions of Section 14 of the Chiropractic Act.

"Experience has indicated that we will not be able
to obtain adequate and competent evidence to justify
prosecution for violations of the Act, unless our In-
vestigator is able to incur reasonable expenses in con-
nection with obtaining evidence. By this, I mean that
in certain cases, he may be required to pay for a
chiropractic adjustment. He may have to obtain certi-
fied copies of recorded instruments. He may need on
the spot secretarial help in connection with taking an
affidavit or in some instances, it will be necessary to
have pictures taken.

"As the situation now stands, we are informed that
items of expenditures, such as the above, cannot be paid
from the Chiropractic Fund. This will seriously handi-
cap the Board in the effective enforcement of the pro-
visions of the Act. It is necessary that we determine
just how far we can expect the Comptroller's Depart-
ment to go in allowing expenditures, such as the above,
to be paid out of our appropriation.

"Question: In the enforcement of the Chiropractic
Act, can this Board, through its Investigator or Board
members, incur expenses such as listed above, and if

the answer is in the affirmative, can the Comptroller approve such expenditures for payment?"

The Chiropractic Act is codified as Article 4512b, Vernon's Civil Statutes. That law creates the Texas Board of Chiropractic Examiners and outlines its purposes and duties. Under Section 14 of this act, the Board is vested with authority to revoke, cancel, or suspend the license of any person, or refuse to admit persons to its examinations and to issue licenses to practice chiropractic, after legal notice and a full and impartial hearing, for any of the reasons designated in paragraphs numbered 1 through 7. These reasons are listed as follows:

"1. For failure to comply with, or the violation of, any of the provisions of this Act;

"2. If it is found that said person or persons do not possess or no longer possesses a good moral character or is in any way guilty of deception or fraud in the practice of chiropractic;

"3. The presentation to the Board, or use of any license, certificate, or diploma, which was illegally or fraudulently obtained, or the presentation to the Board of any untrue statement or any document or testimony which was illegally or fraudulently obtained, or when fraud or deceit has been practiced in passing the examination;

"4. Conviction of a crime of the grade of a felony, or one which involves moral turpitude, or the procuring or assisting in the procuring of a criminal abortion;

"5. Grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public; habits of intemperance, or drug addiction, or other habits calculated in the opinion of the Board to endanger the lives of patients;

"6. The use of any advertising statement of a character to mislead or deceive the public;

"7. Employing directly or indirectly any person or persons whose license to practice chiropractic or any of the healing arts has been canceled, suspended or revoked, or the association in the practice of chiropractic with any person or persons whose license to practice chiropractic or any of the healing arts has been canceled, suspened or revoked, or any person or persons who have

been convicted of the unlawful practice of any of the healing arts in any State, territory or district."

Section 14 further grants to persons aggrieved by any such action of the Board the right to have such issue tried in a proper district court of this State as therein provided.

Section 11 of the Chiropractic Act provides:

"The funds realized from the fees collected under this Act [see Secs. 8, 9, and 10] shall constitute the 'Chiropractic Examiners Fund' and shall be applied to the payment of necessary expenses of the Texas Board of Chiropractic Examiners, including the expenses authorized by said Board in enforcing the provisions of this Act, and to compensate members of the Board for the time actually spent in discharge of their official duties, in the sum of Ten Dollars ($10) per day, plus their actual and necessary expenses.

"All disbursements from said fund shall be made only upon written approval of the president and secretary-treasurer of the . . . Board . . ., and upon warrants drawn by the Comptroller to be paid out of said fund." (Emphasis added throughout.)

Section 2 provides that the Board "shall defray all expenses under this Act from fees provided in this Act."

The current biennial appropriation bill (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, at p. 1320) appropriates to the Board out of the Chiropractic Examiners Fund as follows:

"TEXAS BOARD OF CHIROPRACTIC EXAMINERS
(Out of Chiropractic Examiners Fund)

| Personal Services (Salaries and Wages) | For the Years Ending | |
|---|---|---|
| | August 31, 1952 | August 31, 1953 |
| 1. Board Members per Diem. . | $ 4,680.00 | $ 4,680.00 |
| 2. Executive Secretary. . . . . . | 3,840.00 | 3,840.00 |
| 3. Secretary-Bookkeeper . . . . | 2,640.00 | 2,640.00 |
| 4. Investigator. . . . . . . . . . . | 3,840.00 | 3,840.00 |
| Total . . . . . . . . . . . . . . | $15,000.00 | $15,000.00 |
| 5. Travel Expense . . . . . . . . . | 4,800.00 | 4,800.00 |
| 6. Printing, postage, telegraph, telephone, office rent, equipment, bond premiums, repairs, stationery, office supplies and contingent expenses. | 4,250.00 | 4,250.00 |
| Grand Total - Texas Board of Chiropractic Examiners. . . . . | $24,050.00 | $24,050.00" |

In Attorney General's Opinion 0-6638 (1945) it was held that expenses of the nature here involved could not be paid unless there was an express appropriation for that specific purpose. An examination of that opinion reveals that no consideration was given to the appropriations made for "contingent expense" by Item 5 of Senate Bill 332, 48th Leg., 1943, ch. 400, p. 885, at p. 969. Furthermore, the holding was predicated on Attorney General's Opinion 0-4222 (1941), involving a consideration of the 1941 appropriation to the State Board of Medical Examiners bill (S.B. 423, Acts 47th Leg., R.S. 1941, ch. 571, p. 1114 at p. 1204) which did not contain a specific appropriation for "contingent expense." For this reason we do not believe these opinions are controlling in arriving at an answer to your question

Item 6 of the above appropriation appropriates a lump sum amount to cover certain enumerated specific purposes and also "contingent expenses." Your question with regard to defraying from Item 6 of the appropriation certain expenses necessary to obtain evidence of violation of the Chiropractic Act involves the determination of the meaning to be ascribed to the term "contingent expenses."

The term "contingent expenses" is frequently used to connote future expenses of an unknown and uncertain nature which may or may not be incurred, and which depend on some future uncertain event. Scott v. City of Jamestown, 217 N.W. 668, 673 (N. Dak. Sup. 1928). It is sometimes used to refer to such expenses as are "possible or liable, but not certain to occur." Brannin v. Sweet Grass County, 293 Pac. 970, 972 (Mont. Sup. 1930).

In Dunwoody v. United States, 22 Ct. Cl. 269, 280 (1887), it is said:

"The adjectives contingent, incidental, and miscellaneous, as used in appropriation bills to qualify the word expenses, have a technical and well-understood meaning; it is usual for Congress to name the principal classes of expenditure which they authorize, such as clerk hire, fuel, light, postage, telegrams, etc., and then to make a small appropriation for the minor and unimportant disbursements incidental to any great business, which cannot well be foreseen, and which it would be useless to specify more accurately. For such disbursements, a round sum is appropriated under the head of 'contingent expenses', or 'incidental expenses', or 'miscellaneous expenses.' "

In Attorney General's Opinion 0-906A (1939), it was pointed out that an appropriated "contingent" fund in itself ordinarily im-

plies unpredictable items of cost or expense. So, where the Legislature has foreseen various expenses and provided for them definitely, funds provided for "contingent expense" cannot be used to supplement expenditures for items for which the Legislature made definite and specific provision, unless the context of the appropriation requires a contrary interpretation. Ordinarily, moneys of the contingent fund are to be used for purposes for which the Legislature made no specific itemized provision.

In Attorney General's Opinion O-1294 (1939) it was stated that the appropriations for "contingent expenses" appearing in the 1939 appropriation act were intended by the Legislature to provide lump sum appropriations for those expenditures of a department for which the Legislature did not deem it necessary or expedient to make specific and separate itemized appropriations. We think a like intent should be applied to the appropriation under consideration here. In short, we think the appropriation available in Item 6 for "contingent expenses" was intended by the Legislature for minor disbursements incidental to carrying out the purposes of the Chiropractic Act not elsewhere therein provided for.

It is clear that the questioned expenditures would be for a purpose authorized by the Chiropractic Act. Section 11 of the act provides that, among other purposes, the Chiropractic Examiners Fund "shall be applied to the payment of necessary expenses . . . authorized by said Board in enforcing the provisions of this Act." Section 14 empowers the Board to conduct hearings on the revocation, cancellation, suspension, or withholding of licenses for persons who violate or fail to comply with that law. You have advised that the Board cannot effectively enforce the provisions of this Act unless your investigator may incur reasonable expenses in obtaining adequate and competent evidence that will justify prosecution for violations thereof.

Accordingly, in view of the absence in the Board's current appropriation of a specific item for enforcement purposes, it is our opinion that funds in Item 6, which are available for "contingent expenses," may properly be used in the payment of expenses in obtaining necessary evidence for prosecutions, provided the Board shall have first authorized the incurring of the expense toward the enforcement of the law. Under suitable circumstances any of the expense items enumerated in your letter would be a proper expense in the enforcement of the Chiropractic Act. Furtheremore, under Section 11 of Article 4512b, the Comptroller can legally draw a warrant for the payment of such expenditures.

## SUMMARY

Item 6 of the current biennial appropriation of the Texas Board of Chiropractic Examiners (H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, Art. III, Sec. 1, p. 1320), which includes "contingent expenses" among its purposes, may be used in the payment of expenses incurred in obtaining evidence of violations of the provisions of the Chiropractic Act, provided the Board authorizes the incurrence of the expense. Art. 4512b, Secs. 2, 11, 14, V.C.S.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:meh