## MATHEWS *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted October 17, 1887. — Decided October 31, 1887.

A diplomatic and consular appropriation act which transfers a consulate from the class in which it had previously stood to a lower class, with a smaller salary, operates to repeal so much of previous legislation as placed the consulate in the grade from which it was removed.

*United States* v. *Langston,* 118 U. S. 389, distinguished.

THIS was an appeal from a judgment of the Court of Claims. The case as stated by the court was as follows.

This suit was brought by the appellant to recover from the United States the balance claimed to be due him on account of salary as consul of the United States at Tangier, in the Barbary States, from July 1, 1882, to June 30, 1886. He entered upon the duties of that office July 19, 1870; was paid at the rate of three thousand dollars per annum up to June 30, 1882; and, thereafter, only at the rate of two thousand dollars per annum. He claims that he was entitled to receive the larger sum during the entire period of his service. The Court of Claims, being of opinion that the claimant had no cause of action, dismissed the petition.

The act of August 18, 1856, regulating the diplomatic and consular systems of the United States, contained this provision: " That consuls-general, consuls and commercial agents appointed to the ports and places hereinafter specified in schedules B and C shall be entitled to compensation for their services, respectively, at the rates per annum hereinafter specified in schedules B and C. . . . Schedule B. I. Consuls-General. . . . II. Consuls. . . . Barbary States; *Tangier*, Tripoli and Tunis, each three thousand dollars." 11 Stat. 52, 54.

The same provision was carried into the Revised Statutes, § 1690.

The act of June 11, 1874, making appropriations for the diplomatic and consular service for the year ending June 30, 1875, 18 Stat. 66, contained this provision: " That schedules B and C in section three of the act entitled ' An act to regulate the diplomatic and consular systems of the United States,' approved August eighteenth, eighteen hundred and fifty-six, shall, from and after the first day of July next, read as follows: ' Schedule B. . . . The following consulates shall be divided into seven classes, to be known, respectively, as classes one, two, three, four, five, six, and seven, and the consuls at such consulates shall each be entitled to compensation for their services per annum at the rates respectively specified herein, to wit: Class-one, four thousand dollars. Class two, three thousand five hundred dollars. Class *three*, three thousand dollars. Class four, two thousand five hundred dollars. Class five, two

thousand dollars. Class six, one thousand five hundred dollars. Class seven, one thousand dollars. . . . Class III. . . . Barbary States: Tripoli, Tunis, *Tangier.*'"

The diplomatic and consular appropriation act for the year ending June 30, 1876, 18 Stat. 321, 322, appropriated "for consuls-general, consuls, vice-consuls, commercial agents, and thirteen consular clerks, three hundred and thirty-three thousand two hundred dollars, namely: . . . Class III. Barbary States: Tripoli, Tunis, *Tangier.*" The effect of this act was to leave the annual salaries of these officers as fixed by the act of June 11, 1874. The appropriation acts for the years ending June 30, 1877, and June 30, 1878, made no change. 19 Stat. 170, 233.

But that of June 4, 1878, provides: "That the following sums be, and the same are hereby, appropriated for the service of the fiscal year ending June 30, 1879, out of any money in the Treasury not otherwise appropriated, for the object hereinafter expressed, namely: . . . 'For salaries of consuls, vice-consuls, commercial agents, and thirteen consular clerks, $304,600, namely: . . . Class III, at $3000 per annum. . . . Barbary States: Tripoli, Tunis, *Tangier.*' . . . And the salaries provided in this act for the officers within named respectively shall be in full for the annual salaries thereof *from and after the first day of July, eighteen hundred and seventy-eight,* and all laws and parts of laws in conflict with the provisions of this act are hereby repealed." 20 Stat. 91, 93, 98.

The appropriation act for the year ending June 30, 1880, was the same as that for the previous year. 20 Stat. 267. Those for the years ending June 30, 1881, and June 30, 1882, also appropriated an aggregate sum for consuls, vice-consuls, and commercial agents, keeping the consul at Tangier in "Class III, at $3000 per annum," omitting, however, the provision — first put into the appropriation act for the year ending June 30, 1879, and repeated in the act for the year ending June 30, 1880 — to the effect that the salaries for the officers therein respectively provided for, "shall be in full for the annual salaries thereof from and after the 1st day of July, 1878." 21 Stat. 133, 135, 339, 341. But the act making

appropriations for the year ending June 30, 1883, placed the office of consul at Tangier in the *Fifth* class. Congress appropriated by that act, "for salaries of consuls, vice-consuls, commercial agents, and thirteen consular clerks, $332,100, namely: . . . Class V. *at* $2000 *per annum*. . . . Barbary States: *Tangier*." 22 Stat. 128, 129, 131. Each of the appropriation acts for subsequent years, covering the period here in question, contained the same language, keeping the office of consul at Tangier in "Class V, at $2000 per annum," and differing from the former acts only as to the aggregate amount appropriated for consuls, vice-consuls, commercial agents, and consular clerks; except, that the act of March 3, 1887, contained the additional clause, that the sums thereby severally appropriated were to be "in full compensation for the diplomatic and consular service of the fiscal year ending June 30, 1888." 22 Stat. 424; 23 Stat. 227, 322; 24 Stat. 112, 477.

*Mr. George A. King* for appellant relied upon *United States* v. *Langston*, 118 U. S. 389.

*Mr. Attorney General* and *Mr. Edward M. Watson* for appellee.

Mr. Justice Harlan delivered the opinion of the court.

There is no foundation for appellant's claim. In *United States* v. *Langston*, 118 U. S. 389, 394, we said, that "a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years, and which contained no words that expressly, or by clear implication, modified or repealed the previous law." The present case does not come within that rule; for the consular appropriation acts for the fiscal years ending June 30, 1883, 1884, 1885, and 1886, while recognizing the division made by the act of 1874 of consulates into classes, put the office of consul at Tangier in "Class V, *at* $2000 *per annum*."

In other words, during the whole period covered by the claim in suit, the consul at Tangier was in the fifth class, and there was in force an act of Congress declaring that consuls of that class should receive $2000 per annum; in other words, that sum should be in full compensation for his services each year. The only possible object of transferring the office of consul at Tangier from the third to the fifth class was to reduce the annual salary of that officer to the sum fixed for the annual salaries of consuls of the latter class. The error in the argument in behalf of the appellant is, that he gives no effect whatever to the words "at $2000 per annum," to be found in every appropriation act covering the period in question. But, clearly, those acts, placing this consul in the fifth class, at $2000 per annum, repealed, by necessary implication, so much of previous enactments, including that of June 11, 1874, as placed the consul at Tangier in the third class, at $3000 per annum. The argument to the contrary is not at all aided by the circumstance that the diplomatic and consular appropriation act of March 3, 1887, for the first time after the passage of the act of June 11, 1874, expressly declared that the sums thereby appropriated should be "in full compensation" for the services therein mentioned. That act was passed after the decision in Langston's case, and the words "in full compensation" were introduced therein, out of abundant caution, to preclude any doubt in the future as to the intention of Congress.

*Judgment affirmed.*