143 U.S. 578
 12 S.Ct. 465
 36 L.Ed. 269
 DUNWOODY
v.
UNITED STATES.
 January 25, 1892.
 
 1
 Action by William P. Dunwoody against the United States to recover for services rendered in connection with the national board of health. A counter-claim was filed by the United States, but both the petition and counter-claim were dismissed. 22 Ct. Cl. 269; 23 Ct. Cl. 82. Petitioner alone appeals. Affirmed.
 
 
 2
 STATEMENT BY MR. JUSTICE HARLAN.
 
 
 3
 March 3, 1879. An act was passed by congress to prevent the introduction of contagious diseases into the United States, and establishing the national board of health, to consist of seven members, to be appointed by the president, by and with the advice and consent of the senate, 'whose compensation, during the time when actually engaged in the performance of their duties under this act, shall be ten dollars per diem each, and reasonable expenses;' four members of the board to be detailed from the army, navy, marine hospital service, and the department of justice, respectively, and to receive no compensation. The sum of $50,000 was appropriated 'to pay the salaries and expenses' of the board, and 'to carry out the purposes' of the act. 20 St. p. 484, c. 202.
 
 
 4
 April 5, 1879. The appellant, Dunwoody, was appointed by the board its chief clerk, with compensation at the rate of $100 per month, dating from April 3, 1879.
 
 
 5
 June 2, 1879. Congress passed an act to prevent the introduction of contagious or infectious diseases into the United States, requiring the national board of health to co-operate with, and, so far as it lawfully might, aid, state and municipal boards of health to that end. The act appropriated $500,000, or so much thereof as might be necessary, to meet the expenses incurred in carrying out its provisions, and to be disbursed by the secretary of the treasury on estimates made by the national board of health, and approved by him. This act was to continue in force four years. 21 St. pp. 5, 7, c. 11.
 
 
 6
 June 5, 1879. Dunwoody was nominated by the board to the secretary of the treasury as its disbursing clerk.
 
 
 7
 June 6, 1879. The secretary sent to Dunwoody this communication: 'Upon the recommendation of the national board of health, you are hereby appointed a disbursing agent of this department for the purpose of disbursing the funds appropriated by congress for the national board of health; this appointment to be without compensation. You will be requested to furnish a bond, with two or more sureties, in the penal sum of $20,000.' The bond so required was given.
 
 
 8
 June 12, 1879. The board fixed the salary of the claimant as chief clerk at $2,000 per annum, beginning June 1st.
 
 
 9
 July 1, 1879. An act was passed authorizing the board to procure suitable offices for the transaction of its business, at a rent not exceeding $1,800 a year, and to pay past rent, and providing: 'Sec. 5. That the chief clerk of the national board of health shall act as disbursing agent for the board, and shall give bond, conformably to section 176 of the Revised Statutes, for the faithful performance of that duty, and for such service he shall receive $300 per annum, in addition to his salary as chief clerk; and the board of health may, with the approval of the secretary of the treasury, pay to its secretary such sum, in addition to his pay as a member of the board, as it may deem proper, not exceeding $100 per month.' 'Sec. 7. That all the money hereinbefore authorized to be expended and all contracts made and liabilities incurred by the national board of health shall be paid out of the appropriation of five hundred thousand dollars made in the act of congress * * * approved June 2, 1879.' 21 St. p. 46, c. 61.
 
 
 10
 June 16, 1880. The act appropriating money for sundry civil expenses of the government for the fiscal year ending June 30, 1881, contained these items:
 
 
 11
 'National board of health. For salaries and expenses of the national board of health, and to carry out the purposes of the various acts creating the national board of health, seventy-five thousand dollars, or so much thereof as is necessary: provided, that twenty-five thousand dollars of the appropriation made by the act of June 2, 1879, * * * shall be applied to the same purposes.
 
 
 12
 'For aid to local quarantine stations, and for aid to local and state boards of health, to be used in case of epidemic, one hundred thousand dollars: provided, that fifty thousand dollars of the appropriation made by act of June 2, 1879, * * * shall be applied to the same purposes.' 21 St. p. 266, c. 235.
 
 
 13
 February 8, 1881. Dunwoody's salary as chief clerk was increased to $3,000 per annum.
 
 
 14
 March 3, 1881. The appropriation act for sundry civil expenses for the fiscal year ending June 30, 1882, contained these items:
 
 
 15
 'National board of health. For salaries and expenses of the national board of health, and to carry out the purposes of the various acts creating the national board of health, seventy-five thousand dollars, or so much thereof as is necessary: provided, that fifty thousand dollars of the appropriation made by act of June 2, 1879, * * * shall be applied to the same purposes; and no more money shall be expended for the above purposes out of any appropriations heretofore made or by virtue of any previous law.
 
 
 16
 'For aid to local quarantine stations, and for aid to local and state boards of health, to be used in case of epidemic, one hundred thousand dollars: provided, that fifty thousand dollars of the appropriation made by act of June 2, 1879, * * * shall be applied to the same purposes; and no money shall be expended for the above service for the fiscal year eighteen hundred and eighty-one other than that specifically appropriated by the act approved June 16, 1880, making appropriations for sundry civil expenses of the government.' 21 St. pp. 442, 443, c. 133.
 
 
 17
 August 7, 1882. The sundry civil appropriation act for the fiscal year ending June 30, 1883, contained these items:
 
 
 18
 'For salaries and expenses of the national board of health as follows:
 
 
 19
 'For pay and expenses of the members of the national board of health, ten thousand dollars.
 
 
 20
 'For pay of secretary and disbursing agent, and pay of clerks, messengers, and laborers, five thousand five hundred dollars.
 
 
 21
 'For rent, light, fuel, furniture, stationery, telegrams, and postage, two thousand dollars.
 
 
 22
 'For miscellaneous expenses, five hundred dollars.
 
 
 23
 'And the president of the United States is hereby authorized, in case of a threatened or actual epidemic, to use a sum, not exceeding one hundred thousand dollars, out of any money in the treasury not otherwise appropriated, in aid of state and local boards, or otherwise, in his discretion, in preventing and suppressing the spread of the same.
 
 
 24
 'For aid to state and local boards of health, and to local quarantine stations, in carrying out their rules and regulations to prevent the introduction and spread of contagious and infectious diseases in the United States, fifty thousand dollars: provided, that no other public money than that hereby appropriated shall be expended for the purposes of the board of health: and provided, further, that hereafter the duties and investigations of the board of health shall be confined to the diseases of cholera, small-pox, and yellow fever.' 22 St. pp. 302, 315, c. 433.
 
 
 25
 March 3, 1883. The sundry civil appropriation act for the fiscal year ending June 30, 1884, contained these items:
 
 
 26
 'For the national board of health. For compensation and personal expenses of members of the board, ten thousand dollars.
 
 
 27
 'The president of the United States is hereby authorized, in case of a threatened or actual epidemic, to use a sum, not exceeding one hundred thousand dollars, out of any money in the treasury not otherwise appropriated, in aid of state and local boards, or otherwise, in his discretion, in preventing and suppressing the spread of the same, and maintaining quarantine at points of danger.' 22 St. pp. 603, 613, c. 143.
 
 
 28
 October 20, 1884. During the recess of the senate the president appointed Dunwoody, from civil life, a member of the national board of health, and, on the 4th of December of the same year, appointed him to that position by and with the advice and consent of the senate. Immediately upon his appointment as a member of the board he was designated by it as its secretary. An order was made by the board—on what day it does not appear appointing him its secretary, with the approval of the secretary of the treasury, (which order was not revoked,) with pay at the rate of $100 per month, in addition to his pay as a member of the board. He continued to be secretary, and performed duty as such from November, 1884, to the filing of the petition herein, August 18, 1886. He has received no compensation as secretary.
 
 
 29
 March 3, 1885. The sundry civil appropriation act supplying deficiencies for the fiscal year ending June 30, 1885, and for prior years, contained these items:
 
 
 30
 'National board of health. For salary of the secretary of the board from April 1, 1884, to March 1, 1885, three thousand one hundred and thirty dollars.
 
 
 31
 'For pay of messenger from July 1, 1884, to March 1, 1885, three hundred dollars.
 
 
 32
 'For rent of building from July 1, 1884, to March 31, 1885, nine hundred dollars.' 23 St. pp. 446, 452, c. 359.
 
 
 33
 March 3, 1885. The sundry civil appropriation act for the fiscal year ending June 30, 1886, contained these items:
 
 
 34
 'National board of health. For salaries and expenses of the national board of health, five thousand dollars.
 
 
 35
 'For suppression of epidemic diseases. The president of the United States is hereby authorized, in case of threatened or actual epidemic of cholera or yellow fever, to use the unexpended balance of the sum reappropriated therefor by the act approved July 7, 1884, together with the further sum of three hundred thousand dollars, the same to be immediately available, in aid of state and local boards or otherwise, in his discretion, in preventing and suppressing the spread of the same, and for maintaining quarantine and maritime inspections at points of danger.' 23 St. pp. 478, 496, c. 360.
 
 
 36
 August 4, 1886. An act to supply deficiencies in appropriations for the fiscal year ending June 30, 1886, contained this item:
 
 
 37
 'For salaries and expenses of national board of health, sixty dollars.' 24 St. pp. 256, 289, c. 903.
 
 
 38
 March 2, 1889. An act supplying deficiencies in appropriations for the fiscal year ending June 30, 1889, and for prior years, and for other objects, contained this item:
 
 
 39
 'National board of health. To pay for transportation and storage of books, records, and furniture of the national board of health from September 1, 1886, to March 4, 1889, and the transportation of the same to the office of the surgeon general of the army, where they shall be hereafter stored, one thousand and four hundred dollars.' 25 St. pp. 905, 912, c. 410.
 
 
 40
 Dunwoody received no compensation from the United States either as chief clerk or disbursing agent after July 1, 1883, nor as member of the board from March 1, 1885, to and including June 30, 1885, or from May 12, 1886, to June 30, 1886.
 
 
 41
 There was no meeting of the national board of health after November, 1884, but plaintiff went 'regularly to the office of the board, and attended to his duties as secretary.'
 
 
 42
 The appellant brought this action to recover from the United States $4,442.77, as compensation for his services as chief clerk and disbursing agent from July 1, 1883, to November 5, 1884; $1,710 for services as member of the board from March 1, 1885, to June 30, 1885, and from May 12, 1886, to June 30, 1886; and $2,090 for services as secretary of the board from November 5, 1884, to July 31, 1886; in all, $8,242.77.
 
 
 43
 The United States, besides controverting the claims of the appellant, asked judgment, by way of counter-claim, for $11,391.21, which sum, it was alleged, he had illegally appropriated to his own used out of moneys set apart by congress for the expenses of the national board of health, and not intended by it to be used in payment of any salary or personal compensation.
 
 
 44
 The court of claims dismissed both the petition and counter-claim. 22 Ct. Cl. pp. 269, 277; 23 Ct. Cl. p. 82.
 
 
 45
 Geo. A. King, for appellant.
 
 
 46
 Asst. Atty. Gen. Cotton, for the United States.
 
 
 47
 Mr. Justice HARLAN, after stating the facts in the foregoing language, delivered the opinion of the court.
 
 
 48
 The United States has not appealed from the judgment below, and therefore we need not consider any question raised by its counter-claim.
 
 
 49
 Does this case come within the principle announced in U. S. v. Langston, 118 U. S. 389, 394, 6 Sup. Ct. Rep. 1185? Langston was minister resident and consul general of the United States at the republic of Hayti from September 28, 1877, until July 24, 1885, under a statute providing for a diplomatic representative of the United States to the republic of Hayti, at an annual salary of $7,500. That amount was annually appropriated for the salary of that officer from the creation of the office until 1883. But the diplomatic and consular appropriation acts for the fiscal years ending June 30, 1883, 1884, and 1885, appropriated only $5,000 for the minister of Hayti. And the question was whether Langston was entitled to $7,500 for each of the fiscal years last named. This court said: 'While the case is not free from difficulty, the court is of opinion that, according to the settled rules of interpretation, a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular fiscal years, and which contained no words that expressly, or by clear implication, modified or repealed the previous law.'
 
 
 50
 We do not think the present case comes within the principle of Langston's Case While the act of 1879, establishing the national board of health, may be said to have created the office of member of that board, with a fixed salary, and without express limitation as to time, the accompanying appropriation of a round sum to pay 'the salaries and expenses' of the board, and to 'carry out the purposes' of the act, indicates that congress intended that sum to be the limit of expenditure for such objects, unless further appropriations were made. But all doubt upon this subject is removed by subsequent legislation. The act of June 2, 1879, appropriating $500,000 to be disbursed on estimates to be furnished by the board to the secretary of the treasury, expired, by limitation, on the 2d of June, 1883; and that of July 1, 1879, required all money authorized by it to be expended, and all contracts and liabilities incurred by the board, to be paid out of the appropriation of $500,000. The appropriation of $75,000 by the act of June 16, 1880, was for salaries and expenses of the board, and to carry out the purposes of the various acts creating it. That made by the act of March 3, 1881, for 'salaries and expenses' of the board, was accompanied by a direction that no more money should be expended for the purposes of the various acts creating it, out of any appropriations previously made, or by virtue of any previous law; and the act of 1882 expressly provided that 'no other public money than that hereby appropriated shall be expended for the purposes of the board of health.' These enactments evince the purpose upon the part of congress not to create any liability upon the part of the United States in respect to the work of the national board of health, beyond the amounts specifially appropriated by it from time to time for that work. This purpose, if not clearly indicated by the act of 1879 establishing the board, became manifest before the plaintiff rendered the services for which, in this action, he claims compensation, as upon an implied contract. If the plaintiff is equitably entitled to be paid for any of the services in question rendered by him as a member of the board, and if the special appropriation made for the salaries and expenses of its officers and employes have been exhausted, his appeal must be made to congress. Looking at all the acts of congress passed before he became a member of the board, it is clear that he did not perform services as such member under any implied contract that he should be compensated otherwise than out of the moneys specially appropriated to meet the expenses incurred by the board in the performance of the duties imposed upon it. In other words, that board had no authority to incur any liability upon the part of the government for salaries or other expenses in excess of the amounts appropriated by congress for such purposes.
 
 
 51
 These views dispose of the case, adversely to the plaintiff, as to his claim for compensation as a member of the board. There is still less ground for a judgment in his favor in respect to services rendered as chief clerk, disbursing agent, and secretary. Congress never intended to incur liability for such services beyond the sums appropriated from time to time for the work of the board of health. Judgment affirmed.