# UNITED STATES *v.* VULTE.

### APPEAL FROM THE COURT OF CLAIMS.

No. 256.   Argued March 10, 1914; Restored to docket for reargument April 6, 1914; Reargued April 21, 22, 1914.—Decided May 4, 1914.

A statute which fixes the annual salary of a public officer at a designated sum without limitation as to time is not abrogated or suspended by subsequent enactments which merely appropriate a less amount for that officer for particular years and which contain no words expressly, or by clear implication, modifying or repealing the previous law. *United States* v. *Langston,* 118 U. S. 389.

A provision making a special and temporary appropriation will not be construed as expressing the intent of Congress to have a general and permanent application to all future appropriations. *Minis* v. *United States,* 15 Pet. 423.

The provision in the appropriation acts of 1906 and 1907 excepting Hawaii and Porto Rico from the operation of the provision for additional pay for officers in foreign service is not to be construed as prevailing over the explicit provisions of the act of June 30, 1902, providing for such additional pay including those places, and the salary provided by law of officers on foreign service referred to in the act of May 11, 1908, is that fixed by the act of June 30, 1902.

47 Ct. Cls. 324, affirmed.

THE facts, which involve statutes regulating the amount of additional pay of officers of the United States Navy for service beyond the seas, are stated in the opinion.

*Mr. Assistant Attorney General Thompson* for the United States:

Congress had the power to repeal general salary or compensation acts through special appropriation acts. When such a repeal is claimed the question is determined by the intention of Congress. *United States* v. *Fisher,* 109 U. S. 143; *United States* v. *Mitchell,* 109 U. S. 146; *Matthews* v. *United States,* 123 U. S. 184; *Wallace* v. *United States,* 133 U. S. 180; *McKinstry* v. *United States,* 40 Fed. Rep. 519.

The army appropriation act of April 23, 1904, was intended to redefine the definition of "foreign stations" given in the act of June 30, 1902, so as to exclude Porto Rico and Hawaii; it repealed the act of June 30, 1902, to that extent. See H. Rept. No. 4644, 59th Cong., 1st Sess., p. 3, vol. 4908; H. Repts. (public), 59th Cong., 1st Sess.; S. Rept. No. 1199, 58th Cong., 2d Sess., p. 8, vol. 4573, S. Repts. (public); 38 Cong. Rec., 58th Cong., II, pt. 4, pp. 3906, 3907, and pt. 5, pp. 4406–4470; *Irwin* v. *United States*, 38 Ct. Cls. 87, 98.

The cases relied on by the Court of Claims and cited in its opinion are not opposed to this conclusion. As to *Langston* v. *United States*, 118 U. S. 389, see *Belknap* v. *United States*, 150 U. S. 588, 595; and as to *Converse* v. *United States*, 26 Ct. Cls. 6, see *Carden* v. *United States*, 45 Ct. Cls. 171, 176.

Service beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto shall be as now provided by law under the act of May 11, 1908, 35 Stat. 110, and did not include service in Porto Rico or Hawaii.

The act of June 12, 1906, having been construed by the comptroller and the act of May 11, 1908, having been prepared with reference to the act of 1906, so far as the definition of foreign stations was concerned, must necessarily refer back to the territorial definition of foreign stations as set forth in the act of 1906 and as construed by the comptroller. *Sessions* v. *Romadka*, 145 U. S. 41, 42; *Claflin & Others* v. *Commonwealth Ins. Co.*, 110 U. S. 81; *The "Abbotsford,"* 98 U. S. 440; *Plummer* v. *United States*, 224 U. S. 137, 140.

The army appropriation acts of 1909, 1910, and 1911, respectively, simply make appropriation for services outside the limits of the United States and the Territories contiguous thereto in conformity with existing law as construed by the comptroller.

Since the passage of the act of 1906, the accounting officers of the Treasury have uniformly disallowed increased pay for service in Porto Rico and Hawaii. Such contemporaneous, uniform, and continuous construction is, we submit, entitled to great weight and should not be overruled without cogent reasons. *Brown* v. *United States*, 113 U. S. 568; *Schells, Executor,* v. *Fouche*, 138 U. S. 562; *Hewitt* v. *Shultz*, 180 U. S. 139; *United States* v. *Healey*, 160 U. S. 136; *United States* v. *Sweet*, 189 U. S. 471. When such construction has been approved by Congress, as was done by the act of 1912, it is conclusive.

*Mr. George A. King,* with whom *Mr. William B. King* was on the brief, for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

The appellee, Nelson P. Vulte, filed a petition in the Court of Claims claiming to be entitled to $299.78, being ten per cent. of his regular pay for service beyond the seas. Judgment was entered in his favor for that amount, and the United States prosecuted this appeal.

The court found the following facts: Vulte was appointed second lieutenant in the Marine Corps June 30, 1903, and was promoted to first lieutenant March 3, 1904. Under orders assigning him for duty in Porto Rico with station at San Juan, he sailed from New York for Porto Rico June 27, 1908, and served there until November 3, 1909, when he was detached and ordered back to the United States. He was four days on the return voyage.

If it is held that he is entitled to ten per cent. for services in Porto Rico from the date of sailing from New York until the date of his detachment from duty at San Juan, there would accrue to him the sum of $296.72, and

an additional sum of $3.06 if entitled to pay en route from Porto Rico to New York.

Vulte's pay was originally fixed by § 1612 of the Revised Statutes as follows: "The officers of the Marine corps shall be entitled to receive the same pay and allowances, and the enlisted men shall be entitled to receive the same pay and bounty for reënlisting, as are or may be provided by or in pursuance of law for the officers and enlisted men of like grades in the Infantry of the Army."

On June 30, 1902, as part of the appropriation act for the Army (c. 1328, 32 Stat. 507, 512), Congress modified existing law respecting the pay proper of officers of this grade by the following language: "For additional ten per centum increase on pay of commissioned officers serving at foreign stations, four hundred and fifty-one thousand, four hundred and fifty-six dollars: *Provided*, That hereafter the pay proper of all commissioned officers and enlisted men serving beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto."

As observed by Mr. Justice Booth, delivering the opinion of the Court of Claims: "Thus far the rights of plaintiff [Vulte] respecting pay are obvious; the complications arise by subsequent legislation."

On June 12, 1906, Congress provided—"for additional ten per centum increase on pay of commissioned officers serving beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto (excepting Porto Rico and Hawaii) as provided by act of June thirtieth, nineteen hundred and two, the time of such service to be counted from the date of departure

from said States to the date of return thereto · . . ."
(c. 3078, 34 Stat. 240, 247).

This provision of the act of June 12, 1906, was repeated in the appropriation act of March 2, 1907, c. 2551, 34 Stat. 1158, 1164. ·

The act of May 11, 1908, provided as follows: "That increase of pay for service beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto shall be as now provided by law.

\*      \*      \*      \*      \*      \*      \*      \*

·"For additional ten per centum increase on pay of officers on foreign service, two hundred and eighty-five thousand dollars.

\*      \*      \*      \*      \*      \*      \*      \*

"That nothing herein contained shall be construed so as to reduce the pay or allowances now authorized by law for any officer or enlisted man of the Army; and all laws or parts of laws inconsistent with the provisions of this act are hereby repealed." C. 163, 35 Stat. 106, 110, 114.

The short point in the case is to what the words "shall be as now provided by law" in the act of May 11, 1908, refer—whether to the acts of 1906 and 1907, or more limitedly, we may say, to the exceptions of Porto Rico and Hawaii in those acts, or to the proviso in the act of June 30, 1902, *supra.* In other words, whether the exceptions of those years of those special places shall prevail over the substantive provision of the act of June 30, 1902, *supra,* which is explicit, of enduring effect, and is besides comprehensive of all foreign stations, its language being—

"That hereafter the pay proper of all commissioned officers  .  .  .  serving beyond the limits of the States  .  .  .  shall be increased ten per centum.  .  .  ."

The Government contends for the exceptions as constituting new law, not as a temporary condition under an

old one. The claimant contends for the proviso of the
act of 1902, and counsel, in quite elaborate arguments,
have supported their respective contentions. We shall
not follow the details of their arguments. The question
presented, we think, is in brief compass. Congress man-
ifestly did not think that by the first instance of the
exception, that in the act of 1906, it had done more than
temporarily suspend as to Porto Rico and Hawaii the act
of June 30, 1902. The exception was repeated in 1907.
If the first exception was not intended to affect per-
manently the act of 1902, why should such intention be
ascribed to the second exception—or to both, neither
having words of prospective extension, and, without such
words, naturally having only temporary operation? It
would be extreme to say that by making them Congress
considered that it had established a policy which could be
confidently referred to as having the status and effect of
permanent law.

The exceptions, it is to be remembered, were in appro-
priation acts and no words were used to indicate any other
purpose than the disbursement of a sum of money for
the particular fiscal years. This court has had occasion to
deal with such instances of legislation and their intended
effect on existing law. In *United States* v. *Langston,*
118 U. S. 389, 394, it was decided that a statute which
fixed the annual salary of a public officer at a designated
sum without limitation as to time is not abrogated or
suspended by subsequent enactments which merely ap-
propriate a less amount for that officer for particular
years, and which contained no words that expressly or
by clear implication modified or repealed the previous
law. See also *Minis* v. *United States,* 15 Pet. 423, 445,
where it is said: "It would be somewhat unusual to find
engrafted upon an act making special and temporary
appropriation, any provision which was to have a general
and permanent application to all future appropriations.

Nor ought such an intention on the part of the legislature to be presumed, unless it is expressed in the most clear and positive terms, and where the language admits of no other reasonable interpretation." This follows naturally from the nature of appropriation bills, and the presumption hence arising is fortified by the rules of the Senate and House of Representatives.

The ruling in the *Langston* and *Minis Cases* is not opposed by the cases cited by the Government. In all of them there was something more than the mere omission to appropriate a sufficient sum. There were expressions indicating a broader purpose. In two of them, *United States* v. *Fisher*, 109 U. S. 143, and *United States* v. *Mitchell*, 109 U. S. 146, it was intimated that the law was only suspended for the particular years. In another, *Wallace* v. *United States*, 133 U. S. 180, it was held that the appropriation constituted the law which prescribed the compensation of the office. And in all of them the *Langston Case* was referred to and not disturbed or modified.

*Judgment affirmed.*