## NATIONAL LABOR RELATIONS BOARD v. THOMPSON PRODUCTS, Inc.

### No. 10383.

Circuit Court of Appeals, Ninth Circuit.

March 24, 1944.

Howard Lichtenstein, Associate Gen. Counsel, Joseph B. Robison, and Isadore Greenberg, all of Washington, D. C., and Daniel J. Harrington, of Los Angeles, Cal., for petitioner.

Paul R. Watkins, Richard W. Lund, and Austin H. Peck, Jr., all of Los Angeles, Cal., for respondent.

Before WILBUR and STEPHENS, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

The National Labor Relations Board petitions for the enforcement of its order that respondent cease and desist from engaging in certain unfair labor practices and that it take certain affirmative action. Respondent prays that the order of the Board be set aside.

The proceedings involve a plant in Bell, California, purchased in 1937 by respondent, an Ohio corporation. The plant produces aircraft parts. The majority of its steel, the principal material used in its products, is purchased in the United States outside California, and a majority of its sales are made to customers outside California. The jurisdiction of the Board to entertain the proceeding is shown by the evidence that interstate commerce is affected, and the point is not disputed by respondent.

Upon charges made in 1942 by United Automobile, Aircraft and Agricultural Implement Workers of America, an affiliate of the Congress of Industrial Organizations, the Board issued a complaint against respondent. The gravamen of the complaint was the respondent's alleged domination of a company union formed in 1937 and called the Pacific Motor Parts Workers Alliance, hereinafter called the Alliance. The Board determined that respondent had dominated and interfered with the formation and administration of the Alliance, had rendered support to it, and by these and other specified acts, had interfered with, restrained, and coerced its employees in the exercise of rights guaranteed by § 7 of the National Labor Relations Act, 29 U.S.C.A. § 157, and consequently had violated § 8(1) and (2) of the Act, 29 U.S.C.A. § 158(1) and (2). The Board ordered respondent to cease and desist from engaging in the unfair labor practices found, to withdraw all recognition from and completely disestablish the Alliance, and to post appropriate notices. The order was dated December 31, 1942.

The findings of fact of the trial examiner, as adopted by the Board, are briefly set forth. Respondent purchased its plant in Bell, California, as a going concern from Jadson Motor Products Company in April, 1937. At the time no labor union represented the production employees. In June of 1937 one of those employees, Lewis A. Porter, was asked by one of the management group to join the C. I. O. affiliate. Porter joined, was given money for his dues, and reported back the number of respondent's employees attending the union meetings. In July respondent's personnel director, Raymond S. Livingstone, visited the California plant and through the local Assistant Works Manager, Victor Kangas, requested Porter to aid in starting an inside union. Through him it was hoped that several employees would come to the management, would ask for an inside union, and would demand more pay and better working conditions. Kangas ordered application cards for the union, and Porter obtained them from the printer. The meeting between management and employees was accomplished through the agency of Porter, who was rewarded for his activities. Thereafter, application cards were passed out by the employees and organizational meetings held. Porter, at the instance of Livingstone, delivered a paper suggesting items for a management-labor agreement to a local attorney who was later retained by the Alliance to draft its constitution and bylaws.

On August 12, 1937, respondent entered into a written agreement with the Alliance as exclusive bargaining agent for its employees in the California plant. After periodic renewals a contract was formed containing an automatic renewal clause.

For a time meetings of the executive council of the Alliance were held, memberships solicited, and dues collected in the plant during working hours without objection 'from the management.

Two Alliance officers raised a question as to the status in the plant of certain employees. The personnel director thereupon posted a notice to the effect that the listed men would be asked to resign from the Alliance because they were supervisory employees. Three men held executive positions in the Alliance after assuming supervisory duties. There was evidence of a few anti-C. I. O. remarks made by both management representatives and supervisory employees.

Respondent argues forcefully that the petition for enforcement must be denied because the proceeding is outlawed by the National Labor Relations Board Appropriation Act, 1944, Title IV, Labor-Federal Security Appropriation Act, 1944, Pub. 135, Ch. 221, 78th Cong. 1st Sess., H. R. 2935, 57 Stat. 515, approved July 12, 1943.

In appropriating funds for the Board for the fiscal year ending June 30, 1944, Congress provided: "* * * No part of the funds appropriated in this title shall be used in any way in connection with a complaint case arising over an agreement between management and labor which has been in existence for three months or longer without complaint being filed: Provided, That, hereafter, notice of such agreement shall have been posted in the plant affected for said period of three months, said notice containing information as to the location at an accessible place of such agreement where said agreement shall be open for inspection by any interested person." Respondent points out that its agreement with the Alliance was first entered into August 12, 1937, a few days after the Alliance was organized, and that no charge questioning the labor relations in its California plant was filed until 1942 after a lapse of almost five years. It concludes that the instant case falls squarely within the terms of the quoted language.

That Congress can amend substantive legislation by provisions in an appropriation bill is not questioned. United States v. Dickerson, 310 U.S. 554, 555, 60 S.Ct. 1034, 84 L.Ed. 1356. The problem is whether the National Labor Relations Act actually was so amended. The language added to the Board's appropriation bill for the fiscal year ending June 30, 1944, contains no words necessitating an amendatory construction, and neither does the language used in the bill preclude this construction. Therefore, we must look to the intent of Congress through the expressions of Congressmen and Senators in their consideration of the bill for a proper solution of the problem.[1]

The debates on the floor of Congress reveal that the purpose to be achieved by the rider was the stabilization of labor conditions, particularly the elimination of jurisdictional disputes between unions (89 Cong.Rec. 6648, 6650, 7103). The Congressman who introduced the rider referred to remarked: "The committee feels that we can relieve this Board of some of its duties and responsibilities by placing a limitation on the appropriation which would relieve the Board of the necessity of having to consider complaint cases arising on agreements between management and labor where the agreements have been in existence for 3 months or longer" (89 Cong.Rec. 6046).

In the Senate the proviso was in charge of Senator McCarran, who during the first discussions in the Senate stated in open debate: "Let me say to the Senator that the object of the committee is to work out a comprehensive provision if it can be worked out. * * * but we do not in an appropriation bill propose to amend or alter or nullify a legislative act which has been passed by Congress and which had received Executive approval" (89 Cong.Rec. 6650). Answering the statement of another, Senator McCarran commented: "So far as the stabilization of labor conditions in the country at the present time is concerned, I think I speak for the entire committee

---

[1] For cases determining the intent of Congress in analogous situations dealing with the compensation payable to various officers and employees of the United States, see United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356; United States v. Vulte, 233 U.S. 509, 34 S.Ct. 664, 58 L.Ed. 1071; Belknap v. United States, 150 U.S. 588, 14 S. Ct. 183, 37 L.Ed. 1191; Dunwoody v. United States, 143 U.S. 578, 12 S.Ct. 465, 36 L.Ed. 269; Mathews v. United States, 123 U.S. 182, 8 S.Ct. 80, 31 L.Ed. 127; United States v. Langston, 118 U.S. 389, 6 S.Ct. 1185, 30 L.Ed. 164; United States v. Mitchell, 109 U.S. 146, 3 S.Ct. 151, 27 L.Ed. 887; Minis v. United States, 15 Pet. 423, 10 L.Ed. 791.

when I say that we are in favor of doing anything and everything reasonable to stabilize conditions. But we cannot say to the Senator, and I will not say to him that we will go so far in dealing with the subject as to set aside an existing statute" (89 Cong..Rec. 6650).[2]

The matter went to conference, and thereafter the rider was presented in its final form. In connection with its consideration in the House Congressman Hare, who introduced the rider as an amendment to the appropriation bill, observed: "* * * There is no attempt to amend the National Labor Relations Act. This is only an attempt to have orderly procedure and orderly conduct * * *" (89 Cong. Rec. 7024). It was suggested that, since the real aim was to achieve the intervention of a reasonable length of time between employees' elections for a union to represent them, why not write into the enactment a definite time limitation. Mr. Hare answered: "This is an appropriation bill, and that would be legislation, which would be subject to a point of order. We are trying to accomplish the same thing by a limitation on the appropriation which is parliamentary procedure" (89 Cong.Rec. 7025).

Subsequently, in the Senate the meaning of the rider was clearly expressed by Senator McCarran: "* * * In other words, the National Labor Relations Board may not file complaint case after complaint case and keep a plant in turmoil when it has had notice of an election and an agreement under which the plant is operating. If such a complaint case arises more than 3 months after the agreement has been entered into, then the National Labor Relations Board is precluded by this amendment from filing the complaint case. There is no question about that" (89 Cong.Rec. 7108).

The course of the discussion included several expressions that the provision would deprive the Board of jurisdiction over the specified type of cases. A study of the debates as a whole indicates that although the term jurisdiction was mentioned, something less than that was actually meant. The conclusion is unavoidable that a limitation on appropriations, not an alteration in the basic act, was contemplated.

■ Statements that the provision would constitute a substantive amendment of the National Labor Relations Act were propounded by opponents of the rider. It is well established that such views cannot be relied upon as indicative of legislative intent although the statements of those in charge of a bill may be considered as evidence of its meaning. Wright v. Vinton Branch, 300 U.S. 440, 463, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 493, 51 S.Ct. 510, 75 L.Ed. 1183; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 475, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196.

■■ It was emphasized in both houses of Congress, and is notable herein, that the provision, being included in an annual appropriation bill, was of a temporary nature. Congressman Tarver, a member of the committee which considered the proviso, pointed out: "* * * This is not a permanent amendment to the National Labor Relations Act. This is an emergency measure. It is only to be effective for the 12 months that this appropriation bill is effective, * * *" (89 Cong.Rec. 7026). Similarly Senator McCarran announced: "I made the statement that this provision would tend to stabilize labor relations for the duration of the war. In that statement I was in error, because this bill is an appropriation bill, which runs for only 1 year. But in the interim the Congress hopes that legislation may be enacted which will stabilize labor relations for the duration of the war. * * *" (89 Cong.Rec. 7103). Although a substantive amendment to a basic act may be incorporated in an appropriation act from year to year, United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356, unless a contrary purpose is clearly evident the limited period to

---

[2] The following colloquy also took place in the Senate:

Mr. Shipstead. "* * * I understood him [Mr. McCarran] to say he did not think this matter was one which should be handled on an appropriation bill."

Mr. McCarran. "I said, or at least I intended to say, that I did not think an appropriation bill was the proper place in which to set aside the force and effect of a legislative act."

Mr. Shipstead. "Does the Senator think that in conference a satisfactory amendment could be worked out which would not do that, and yet at the same time would achieve a remedy for the situation?"

Mr. McCarran. "My wish will be the father of my thought, and I express my thought, and say I hope so. * * *" (89 Cong. Rec. 6650).

which the provision applies suggests that no substantive change was intended. See United States v. Vulte, 233 U.S. 509, 34 S.Ct. 664, 58 L.Ed. 1071. We believe that the rider was not intended as a substantive amendment to the National Labor Relations Act.

The rider by its text is limited in its application to what is termed "complaint" cases. There is much confusion with respect to the meaning of this term as it is used therein. The term "complaint case" without more may mean a complaint or charge laid before the Board, or it may mean any matter before the Board which has progressed to the point of a complaint or action issued by the Board against named respondents. Even then a "complaint case" may be interpreted as ending with the decision of the Board, or it may be interpreted as continuing to the end of litigation for enforcement or review before this or the Supreme Court.

■ A rather thorough review of the congressional debates and committee discussions in connection with the rider, some of which we have quoted, convinces us that its application must be held to limit only proceedings pending before the Board. There is nothing in these expressions to indicate in the slightest manner that matters already ripened into a final order of the Board cannot be further dealt with in the courts, as provided for by the Labor Act, or that moneys appropriated for the current fiscal year cannot be used in connection with enforcement or review petitions in the courts. There is nothing to indicate that the purposes of the rider would be effectuated by the inclusion of court proceedings within its scope. Certainly there is nothing to indicate that proceedings pending in a federal court at the time of passage of the Appropriation Act, as was the case of the instant proceeding, should fall within the terms of the rider. N.L.R.B. v. Elvine Knitting Mills, Inc., 2 Cir., 138 F.2d 633, 634.

■ It is urged that the Board abused its power in failing to dismiss the complaint against respondent under the doctrine of laches since approximately five years had elapsed between the formation of the Alliance and the filing of the charge with the Board alleging company-domination. The timeliness of a charge is a matter within the Board's discretion, and its failure to dismiss a complaint based on charges filed long after the occurrences complained of without pointing out the unfair effect of the delay cannot be held to be an abuse of its discretion.

■ Respondent contends that the trial examiner, upon whose findings of fact and conclusions of law the Board's order was based, clearly favored the Board throughout the hearing before him and consequently that respondent did not receive a fair hearing and was denied due process of law. Our examination of the record discloses no attitude of partiality and prejudice on the part of the trial examiner. It exhibits nothing analogous to the procedure condemned in the cases cited by respondent— N.L.R.B. v. Washington Dehydrated Food Co., 9 Cir., 118 F.2d 980, and Inland Steel Co. v. N.L.R.B., 7 Cir., 109 F.2d 9—which would justify a conclusion that respondent had been denied a fair trial.

■ Respondent argues that the testimony of two witnesses is "utterly worthless" on the ground of their apparent hostility toward respondent and the numerous contradictions and inconsistencies in their stories. Respondent then points out that the finding of company domination of the Alliance rests mainly upon the accounts of these two witnesses. There is no question that it is within the province of the Board to resolve conflicts in testimony. Here the Board accepted the testimony of the two witnesses. Also many details therein were substantiated by independent evidence. The record is not such that this court can as a matter of law discredit their testimony.

■ There is evidence that the management instigated the inside union by creating interest therein through the agency of an employee, that several supervisory employees were members and officers of that union, that council meetings were held and members solicited on company property during working hours, and that hostility to the C. I. O. was exhibited by anti-C. I. O. remarks made by management representatives and supervisory employees. Obviously, there is substantial evidence to support the findings of the Board.

■ In the instant case compliance by the respondent with the Board's order would destroy the effectiveness of the Alliance, which has not been made a party to the proceedings. However, the record shows that the Alliance was served with copies of the charge, complaint, notice of hearing. The record shows also that its

president appeared on behalf of the Alliance at the hearing before the trial examiner, although there was no motion to intervene, and that he called six witnesses for the Alliance and cross-examined witnesses called by the Board and by the respondent. Since the Board's order herein is directed solely to the employer and since the Alliance was given notice and an opportunity to be heard, there is no question that the Board had authority to make the order affecting the respondent-Alliance contract. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799; N.L.R.B. v. Sterling Electric Motors, 9 Cir., 112 F.2d 63, and Id., 9 Cir., 109 F.2d 194. In the circumstances the Board's order herein is proper.

Affirmed.