**KATZ et al. v. NATIONAL LABOR RELATIONS BOARD.**

No. 12827.

United States Court of Appeals, Ninth Circuit.

April 21, 1952.

412

Paul R. Watkins, Richard W. Lund and Ira M. Price, II, Los Angeles, Cal., for petitioners.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Arnold Ordman, Henry Geller, George O'Brien, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

Petitioners are partners doing business as Lee's Department Store at Huntington Park, California. They seek to review and set aside an order of the respondent Board determining that petitioners had engaged in certain unfair labor practices and requiring them to cease and desist therefrom. The answer of the Board requests that its order against petitioners be enforced.

Petitioners say that the Board was without jurisdiction over them because they were not engaged in commerce within the meaning of the Labor Management Relations Act, 1947, 29 U.S.C.A. §§ 141 et seq., 151 et seq., and that in view of the character of petitioners' business, it cannot be said that either their business as a whole, or the particular acts or activities complained of, were of a character "affecting commerce" under the Act.

Petitioners' store sells men's, women's and children's apparel, jewelry, household goods, furniture, appliances and shoes, in a town of slightly less than 30,000 population. The store employs about 60 full time employees; all sales are to residents of the area, and it ships no merchandise out of the State. During the year ending November 24, 1948, it made purchases of approximately $1,000,000 in value, of which $300,000 orginated outside of California.

Petitioners assert that under the principles laid down in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, their business activities are of such an essentially local character that they are not subject to the Board's processes or powers. Petitioners cite a large number of Board decisions wherein the Board has declined to exercise jurisdiction over certain business operations which had a much more substantial relation to, and affect upon interstate commerce, than has the business of these

petitioners. In those cases, where the enterprise in question involved out of state sales, or sales to instrumentalities of interstate commerce, or where there were larger volumes of interstate purchases than those made by petitioners, the Board, it is claimed, has nevertheless declined to exercise jurisdiction on the ground that those business operations were essentially local in character, and that to exercise jurisdiction would not effectuate the policies of the Act. Attention is called to the fact that the Board in October, 1950, announced certain standards by which it would thereafter be guided in determining whether it would take jurisdiction of a business. It is said that Lee's Department Store did not measure up to those standards.

However, the Board found upon substantial evidence that the particular allegedly illegal contract out of which grew the unfair labor practices here in dispute, was negotiated by a number of similar local stores who bargained as a group with all of their employees as a single bargaining unit. These stores, members of the group, had in the period mentioned, combined total purchases in excess of $3,000,000, of which more than $750,000 worth was received directly from points outside of the State of California. This combined volume would more than measure up to the Board's October, 1950, standards.

Petitioners say that the Board cannot create jurisdiction by taking this entire group into consideration, as the existence of the group did not change the essentially local character of petitioner's business operations.

In N.L.R.B. v. Townsend, 9 Cir., 185 F.2d 378, 382, this court said that "unless the volume of commerce that might be affected is so slight as to bring into play the maxim de minimis, the applicability of the Act is not dependent upon the amount of commerce affected." In N.L.R.B. v. Atkinson, 195 F.2d 141, decided February 29, 1952, this court recognized that generally whether the Board should, in a borderline case, abstain from or assume jurisdiction, is a decision exclusively for the Board. Compare, also, Haleston Drug Stores v. N.L.R.B., 9 Cir., 187 F.2d 418.

We think that without regard to whether the Board should consider in this connection the whole employers' group mentioned, or only the store of petitioners, it cannot be said that the present case is one for the application of the maxim de minimis. National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 685, 71 S.Ct. 943, 95 L.Ed. 1284. The contention that the Board lacks jurisdiction is without merit.

Proceeding to the question of the merits of the Board's determination, it appears that on January 31, 1947, the group of stores we have mentioned and of which Lee's Department Store was a member, entered into an agreement on behalf of its member stores, with Amalgamated Clothing Workers of America, Local No. 81, C. I. O., providing for rates of pay and conditions of employment of all their employees. The agreement, signed by the six stores which made up the group, contained a union shop provision in the form hereinafter mentioned. By its terms the agreement was to remain in effect until January 31, 1949. It contained a provision that upon written request by either party made not less than thirty days prior to January 31, 1948, the parties should negotiate during the last mentioned month with respect to extending the term of the agreement to January 31, 1950. No party took advantage of such provision, but in the latter part of 1948, when the 1947 agreement was about to expire, the Union initiated discussions for a new agreement providing, among other things, for an increase in wages. The members of the association, including petitioners' store, and the Union, concluded their negotiations and executed an agreement on December 17, 1948, which was to take effect February 1, 1949, the day following the expiration of the old agreement. It was to be in effect for a two year period. It contained, as did its predecessor, a union shop provision that all presently employed full time employees should become members of the Union within 15 days from the date of the agreement, and all employees newly hired after the date of the agreement should become members of the Union within 30 days after the date of their employment.

In either case, those employees not conforming with this agreement were required to be discharged. The portions of the provision material here appear in the margin.[1] It was this provision which gave rise to the unfair labor charges involved here.

Retail Clerks International Association, A. F. of L., filed against petitioners a charge alleging that they had assisted and supported the Union with which the above agreement had been made, and that they had discriminated against employees in regard to tenure of employment by discharging such employees for the purpose of discouraging membership in the complaining Union, and for the further purpose of encouraging membership in the signatory Union. It alleged discharge of a named employee for favoring the complaining Union and expressing a dislike for the other Union.

Following this charge, the complaint upon which the hearing was had was filed against petitioners and another store in the group. It set forth the execution of the union shop provision mentioned above on December 17, 1948, and alleged that the respondent stores and the Union "At all times since on or about December 17, 1948 * * * have enforced and given effect to said agreement and all renewals and extensions

thereof and have required membership in the Amalgamated Clothing Workers of America, Local Union No. 81, C. I. O., as a condition of employment". It was charged that the agreement had not been sanctioned by any union-authorization election, (which at the time was required by section 8(a) (3), infra, note 2), and hence the agreement was illegal and invalid and Lee's Department Store had been guilty of unfair labor practices within the meaning of § 8(a) subdivisions (1) and (3) of the Act.[2]

After hearing, the trial examiner found that Lee's Department Store had as alleged, unlawfully enforced an illegal union shop provision, and the Board agreed with the examiner's finding. The order was that such store and the petitioners cease and desist from renewing or enforcing any agreement with the Amalgamated Union or any other labor organization which requires their employees to join or maintain membership in such labor organization as a condition of employment, unless such agreement has been authorized as provided by the Act; from recognizing the Amalgamated Union as the representative of their employees at their store unless and until the organization shall have been certified by the Board; and from giving effect to their

1. "Article 5. Membership in Union * * 2. Subject to the exceptions specified in paragraph 1 of this article, all full-time employees at present employed in the classification specified in Article 11 shall become members of the signatory union within fifteen (15) days after the effective date of this agreement or shall be discharged by the Employer. * * * 3. Subject to the exceptions specified in paragraph 1 of this Article, all full-time employees in the classification specified in Article 11, and who are hired after the effective date of this agreement will become members of the signatory union within 30 days after the date of their employment or shall be discharged by the Employer."

2. "Sec. 8(a) It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made; and (ii) if, following the most recent election held as provided in section 9(e) the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement * * *."

contract of December 17, 1948.[3] Appropriate affirmative action was required.

Petitioners' contention with respect to this determination is (1) that the language of the charge upon which the complaint was based was inadequate in that it was couched in only the most general terms; (2) that the prosecution of the proceeding is barred because the charge was not served within the six months period prescribed in the proviso in § 10(b) of the Act;[4] (3) that the agreement of December 17, 1948, upon which the complaint was based, was merely an amendment of the 1947 agreement which preceded the passage of the amended Act and therefore the original agreement, and also the amended extension thereof, was valid without any union-authorization election.

▇▇▇▇ We hold that the charge was sufficient to support the allegations of the complaint, and that it was not too general.[5] The assertion that the charge was not filed and served within the required period of six months, is also without merit. While the offending agreement was executed on December 17, 1948, and the charge was filed with the Board June 17, 1949, the charge was not served until June 21, 1949;

the allegation of the complaint quoted above, to the effect that the petitioners and the Union had enforced and given effect to the agreement "at all times since on or about December 17, 1948", was admitted in the answer, and was not controverted before the Board.

While, as we shall shortly show, the mere execution of the agreement on December 17, 1948, constituted an unfair labor practice, there is no doubt but that the continuous enforcement of the agreement thereafter within the six months period prior to the filing of the charge, was an unfair labor practice, and with respect to this continued and continuous enforcement of the illegal union shop agreement, the prosecution of the proceeding was not barred by limitations. Superior Engraving Co. v. N. L. R. B., 7 Cir. 1950, 183 F. 2d 783, 790, certiorari denied 340 U.S. 930,[5a] 71 S.Ct. 490, 95 L.Ed. 671.

▇▇▇▇ Petitioners' contention that the enforcement of the union shop agreement was not an unfair labor practice because it was pursuant to the provisions of an agreement made prior to the enactment of the amended Act is based upon section 102 of the Act, 29 U.S.C.A. § 158 note.[6] It is

---

3. The Board's order was entered October 4, 1950, and the petition for review was filed here January 27, 1951. Hence, the Act of October 22, 1951, Public Law 189, 82d Cong., 1st Sess. Chap. 534, 29 U.S.C.A. § 168 setting aside the requirement of a union-authorization election as a pre-requisite to the execution of a union-shop agreement does not affect these proceedings.

4. "Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

5. Cusano v. N. L. R. B., 3 Cir., 1951, 190 F.2d 898; N. L. R. B. v. Westex Boot & Shoe Company, 5 Cir., 1951, 190 F.2d 12; Kansas Milling Co. v. N. L. R. B., 10 Cir., 1950, 185 F.2d 413.

5a. N. L. R. B. v. Pennwoven, Inc., 3 Cir., 194 F.2d 521, cited by petitioners, is not in point here. It held that continued nonaction was not the equivalent of con-

tinuous action. Here we have an admitted "continuous enforcement" of the illegal agreement.

6. "Sec. 102. No provision of this title shall be deemed to make an unfair labor practice any act which was performed prior to the date of the enactment of this Act which did not constitute an unfair labor practice prior thereto, and the provisions of section 8(a) (3) and section 8(b) (2) of the Natonal Labor Relations Act as amended by this title shall not make an unfair labor practice the performance of any obligation under a collective-bargaining agreement entered into prior to the date of the enactment of this Act, or (in the case of an agreement for a period of not more than one year) entered into on or after such date of enactment, but prior to the effective date of this title, if the performance of such obligation would not have constituted an unfair labor practice under section 8(3) of the National Labor Relations Act prior to the effective date of this title, unless such agreement was renewed or extended subsequent thereto."

contended that what was done on December 17, 1948, was merely an amendment continuing the old contract in effect with certain changes in the wage rate. We note, however, that although the original contract of 1947 contained a provision for reopening the same, upon proper notice, in January, 1948, to negotiate changes in the wage rates and for the purpose of extending the term of the agreement for an additional year, the parties did not take advantage of that but undertook to execute a new agreement as the 1947 contract was about to terminate, the new agreement of December, 1948, to become effective on the expiration of the earlier agreement.

We hold that this was a renewal or extension of the prior agreement within the meaning of the concluding clause of section 102, and therefore that section 102 gives the December 17, 1948 agreement no validity.

Finally, it is contended that the proceeding should have been dismissed upon petitioners' motion for failure of general counsel to join Amalgamated as a party respondent. We know of no rule that gives support to that contention, or that requires that the Union be joined as a party respondent. The record does show that the Union appeared at the hearing before the Examiner and before the Board and it participated fully in the proceedings. This final contention is also without merit, Cf. N. L. R. B. v. Thompson Products Inc., 9 Cir., 1944, 141 F.2d 794, 799.

Accordingly, the petition for review is denied.

By communication filed with the court, the Board has consented to a modification of the language of subdivision 4 of that portion of the order listing acts from which the petitioners are required to cease and desist. As entered by the Board, the provision is that petitioners shall cease and desist from "in any other manner interfering with, restraining or coercing their employees in the exercise of their right to self organization", etc. The Board concedes that petitioners were proceeding on the mistaken assumption that they were not engaged in commerce within the meaning of the Act, and had no general attitude of dis-

regard for the rights of employees, and hence consents that its order should be modified by substituting the words: "like or related" for the word "other" in the quoted phraseology, so that the paragraph will commence "In any like or related manner interfering with", etc. A decree enforcing the Board's order, so modified, will be entered.