Jones, Chief Judge,
delivered the opinion of the court:
We are persuaded to believe that counsel has misunderstood the purport of our opinion. Perhaps we did not make our position clear. We readily recognize that Congress may place any limitations whatever on the expenditure of funds, and this court will respect such limitations. Certainly, Congress may by basic legislation forbid any noncitizen to be employed, and so long as it remains in effect it would completely forbid such emplojunent.
While normally legislation in the House of Bepresenta-tives is handled by legislative committees, there is not the slightest doubt that it may be attached to an appropriation bill by what is usually termed a “rider”. This may be done in two ways. First, by what is generally known as the Holman rule, a limitation may be placed on the use of funds made available in an appropriation bill, if it will tend to reduce expenditures. This usually applies to funds made available for that fiscal year.
Then, too, even permanent legislation may be attached to an appropriation bill, and if no point of order is made against it before passage in the House, or if a special rule makes it in order, it becomes permanent legislation. But in that event it is usually accompanied by wording such as will show it to be permanent legislation. Frequently the term “hereafter” or some wording to indicate it to be permanent legislation is used.
But the provision involved here did not purport to be basic or permanent legislation. It was simply a limitation on the expenditure of current funds. So long as this limitation remained attached to each year’s appropriation, the funds for that year could not be used in any forbidden way. But even that would not prevent Congress from paying an obli *769 gation out of any funds not so limited or from making a special appropriation for the purpose of paying any obligation. Congress has complete power over the purse strings, and no money may be paid out of the Treasury without its approval.
We did not hold that the money should be paid out of any particular fund, but merely that plaintiff had, in good faith, rendered services; that the defendant had received the benefit of those services, and that the court unanimously felt that an obligation was thereby created.
Ordinarily when a limitation in either form is attached to an appropriation bill no one in any agency of the Government would think of employing anyone who came clearly within the ban of the limitation. Everyone would respect the expressed wishes of the Congress. In this case, however, the Congressman evidently thought that he was “fully authorized” under Public Law 512, 78th Congress, 2d Sess. (58 Stat. 831), to employ the plaintiff. He checked with the immigration authorities who also thought that the affidavit which plaintiff filed was sufficient to bring her within the exception set out in subdivision (3) of section 1302 of the Supplemental Appropriation Act of 1952 (65 Stat. 755, 759). This is one of those unusual cases which rarely occurs and which would in no way interfere with the usual application of the limitation on the use of current public funds. In these circumstances there can be no possible disturbance of the fiscal affairs of the Government.
Evidently the Congressman, the immigration authorities who were consulted, and the plaintiff all in good faith thought the way was cleared for plaintiff’s employment. She was placed on the rolls and worked for 12 days. No one was particularly to blame. There was apparently no concealment anywhere.[1]
*770 Defendant’s counsel insist that plaintiff is charged with a knowledge of the law. But when a Member of Congress, who had a part in the enactment, and the head of the Immigration Service believed that plaintiff had fully complied with the terms of the limitation, to insist that plaintiff, who had only taken her first step toward citizenship and who was undertaking to master a new language, should give the express language a contrary meaning is carrying an otherwise wholesome doctrine to the borders of absurdity.
No one has more respect for the authority of the Congress than this court. Some of us have seen service in that body. We fully respect the traditional separation of the three branches of the Government. We have at all times studiously avoided taking any action that would take us beyond the judicial field and have sought at all times to carry out the wishes of the Congress.
Aside from all other considerations, the fact remains that plaintiff was placed on the rolls; that she actually did the work she was called upon to do; that the United States Government received the benefit of that work and we find that she should be paid on a quantum meruit basis. It is on this basis that judgment was rendered.
We feel that when the facts are fully understood everyone connected with the transaction will want her to be paid the reasonable value of her services. The defendant’s counsel have stated that they have no objection to our advising Congress that payment should be made, but this is not a congressional reference case. We can, therefore, only give judgment for plaintiff or defendant. The court has unanimously given judgment for the plaintiff on a quantum meruit basis. We think that whatever may be the proper interpretation of the limitation the plaintiff should be paid.
The motion for new trial will be overruled.
It is so ordered.
Laramore, Judge; MaddeN, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 The defendant calls our attention to United States v. Dickerson, 310 U. S. 554 (1940). However, that case Is, we think, distinguishable from the case at bar. In that particular case the existing legislative authority was specifically referred to and suspended for the time being. More nearly in point in principle are the cases of United States v. Langston, 118 U. S. 389 (1886); United States v. Vulte, 233 U. S. 509 (1914); Bell v. United States, 35 Fed. 889 (1887); Archbald v. United States, 218 Fed. 270 (1914); Strong v. United States, 60 C. Cls. 627, 630 (1925), and other cases that might be cited.